**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 18-07304 (ESL) |
| VAQUERÍA LAS MARTAS, INC. | CHAPTER 12 |
| Debtor | |

**MOTION TO PROHIBIT USE OF CASH COLLATERAL AND FOR ENTRY OF ORDER
AUTHORIZING CONDADO 5, LLC TO SEEK AND COLLECT PROCEEDS**

TO THE HONORABLE COURT:

COMES NOW Condado 5, LLC ("Condado 5") through the undersigned counsel, and respectfully states and prays as follows:

Factual and Procedural Background

1. On or around January 12, 2005, Banco Popular de Puerto Rico ("BPPR"), predecessor in interest of Condado 5, extended to the Debtor a credit facility in the amount of $1,850,000.00 (the "Loan"). See the *Loan Agreement* attached hereto as **Exhibit I** and the endorsed note attached hereto as **Exhibit II**.

2. The Loan is secured, *inter alia*, by 58,700 quarts of Debtor's bi-weekly milk quota. See *Security Agreement* attached hereto as **Exhibit III**. Also see *Financing Statement* attached hereto as **Exhibit IV**.

3. Thus, the Debtor's income from the milk quota as described above is encumbered by Condado 5's lien.

4. On December 14, 2018, the Debtor filed the instant Chapter 12 bankruptcy petition. See Docket No. 1.

5. The Debtor has not requested authorization to use Condado 5's cash collateral and Condado 5 hereby requests the Court to enter an Order prohibiting such use.

Applicable Law and Analysis

*(A)    Cash Collateral, Generally*

6.     When the Debtor filed for bankruptcy, the Debtor's proceeds from the milk quota and accounts receivable that is part of Condado 5's security as described above became cash collateral under Section 363(a) of the Bankruptcy Code. See In re Nat'l. Promoters and Services, Inc., 499 B.R. 192, 208 (Bankr. D.P.R. 2013) (Lamoutte, B.J.).

7.     Section 363(a) of the Bankruptcy Code defines "Cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels , or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

8.     Section 363(c) of the Bankruptcy Code prohibits a Debtor to "use, sell, or lease cash collateral" not in the ordinary course of business, unless: (a) the secured creditor consents; or (b) the court authorizes it after notice and a hearing. See 11 U.S.C. § 363(c)(2).  In the instant case, because Condado 5 has not consented for the Debtor to use the cash collateral, the court must authorize such use within the confines of the Bankruptcy Code. See 11 U.S.C. § 363(c)(2)(B).

9.     Section 552(b)(2) of the Bankruptcy Code provides that if a creditor, such as Condado 5, obtained a pre-petition security interest in proceeds paid to the Debtor, such security interest extends to post-petition proceeds to the extent provided in the security agreement. See In re Manuel Mediavilla, Inc., 505 B.R. 94, 100 (Bankr. D.P.R. 2014) (Caban, B.J.).

10.    Condado 5 holds a first priority pre-petition security interest over the Debtor's milk quota as described above.

11.    The post-petition effect of such security interest is governed by Section 552(b)(2)

of the Bankruptcy Code, which states in pertinent part:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2).

*(B)  Adequate Protection*

12.  Section 363(b) of the Bankruptcy Code allows a debtor to use cash collateral other than in the ordinary course of business, subject to objection by the secured creditor under Section 363(e).  Section 363(e) provides that when a creditor objects to a debtor's use of its cash collateral, the bankruptcy court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

13.  Under Sections 362, 363 and 364 of the Bankruptcy Code, a secured lender is entitled to be "adequately protected" from any erosion in the value of its collateral.  See Timbers, 484 U.S. at 370 ("It is common ground that ... a secured creditor's interest is not adequately protected if the security is depreciating during the Chapter 11 reorganization.")  Also see In re Martin, 761 F.2d 472, 474-77 (8th Cir. 1985) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 53) (adequate protection should "as nearly as possible" provide secured lender with bargained-for rights); Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group), 16 F.3d 552, 564 (3rd Cir. 1994) (same).

14.  The right to adequate protection arises from the Fifth Amendment's property interest protections.  See In re Panther Mt. Land Dev., LLC, 438 B.R. 169, 189 (Bankr. E.D. Ark.

2010), aff'd 2011 Bankr. LEXIS 1274 (B.A.P. 8th Cir. 2011), citing In re Carson, 34 B.R. 502, 505 (D. Kan. 1983); In re Johnson, 90 B.R. 973, 979 (Bankr. D. Minn. 1988). "The purpose of adequate protection is to guard the secured creditor's interest from a decline in the value of the collateralized property." In re Panther Mt. Land Dev., LLC, 438 B.R. at 189, citing 11 U.S.C. § 361; In re Anthem, 267 B.R. 867, 871 (Bankr. D. Colo. 2001); U.S. Sav. Ass'n v. Timbers, 484 U.S. at 370.

15. Hence, in exchange for providing protective assurances against a decline in property value, a debtor is allowed to retain the protections provided by the Bankruptcy Code. See Timbers, 484 U.S. at 378. "It is well settled that the debtor bears the burden to demonstrate that a creditor is adequately protected." In re National Promoters & Servs., 499 B.R. at 208, quoting In re South Side House LLC, 474 B.R. 391, 408 (Bankr. E.D.N.Y. 2012).

16. "Adequate protection" is "a term of art in bankruptcy practice, defined in 11 U.S.C. § 361 and applied in §§ 362(d) and 363(e); in short, it is a payment, replacement lien, or other relief sufficient to protect the creditor against diminution in the value of his collateral during the bankruptcy." Bank of N.Y. Trust Co. NA v. Pac. Lumber Co. (In re Scopac), 624 F.3d 274, 278, fn. 1 (5th Cir. 2010).

17. "Although 'adequate protection' is not defined in the Bankruptcy Code, the provisions in 11 U.S.C. § 361 constitute an illustrative, non-exclusive list of the remedies that may be fashioned by the court to secure the 'indubitable equivalent' of the entity's interest in such property." In re National Promoters & Servs., 2013 Bankr. LEXIS 4267 at *5, 2013 WL 5567262 (Bankr. D.P.R. 2013). For instance, adequate protection may be provided by cash payments or additional or replacement liens "to the extent" debtor's use of the property "results in a decrease of value of such entity's interest in such property". 11 U.S.C. § 361(1).

18. Some courts have applied a "lien replacement" approach, which assumes that a security interest in rents should not be treated as an independent security interest for purposes of adequate-protection analysis. See e.g. In re Mullen, 172 B.R. 473 (Bankr. D. Mass. 1994).

Under the "lien replacement" approach, the secured creditor is treated as having a lien on each month's rent that is replaced by another lien on the following month's rent. Thus, even if the debtor is permitted to use the rental-income stream for purposes other than maintaining the value of the real property, under the lien-replacement theory, the secured creditor remains adequately protected by virtue of the ever-renewing lien on future rents. The lien-replacement theory, however, has been harshly criticized in recent years as being inconsistent with the requirements of Section 552(b). See Putnal v. Suntrust Bank (In re Putnal), 489 B.R. 285, 290 (M.D. Ga. 2013) ("the replacement lien theory has by now been generally discredited"). "Most courts recognize that a prepetition security interest in rents is a special kind of collateral that, pursuant to 11 U.S.C. § 552(b), continues in full force and effect after the petition is filed." Id. As such, the replacement lien theory's protection has been described as "illusory". See In re Smithville Crossing, LLC, 2011 Bankr. LEXIS 4605 at *31, 2011 WL 5909527 at *10 (Bankr. E.D.N.C. 2011) ("Virtually every case addressing this issue has held that the proffer of a replacement lien on post-petition rents is illusory by virtue of § 552(b) of the Bankruptcy Code"). In other words, a replacement lien simply provides no protection for the very real interest the creditor has in accruing rents. "It is clear from these cases that giving a replacement lien on post-petition rents is not adequate protection or the indubitable equivalent of the post-petition rents." Id. In re Putnal, *supra*, is a recent case of what appears to be a growing majority of courts holding that a secured creditor's interest in post-petition rents is entitled to separate and independent adequate protection, even if the creditor's interest in the rent-producing real property itself is adequately protected.

19.  In In re Builders Group & Dev. Corp., 502 B.R. 95, 122 (Bankr. D.P.R. 2013), the Bankruptcy Court held that "the fact that rental income is utilized to pay the operating expenses of the shopping center by itself does not provide the adequate protection required under 11 U.S.C. § 363 for the security interest regarding the assignment of rents." Also see In re River Oaks Ltd. Partnership, 166 B.R. 94, 99 (E.D. Mich. 1994) ("The Court does not believe the mere fact that the rental income is used to pay the necessary expenses of operating and maintaining the

property or that the property is adequately maintained and not depreciating, in and of itself, provides the adequate protection required under § 363 for the security interest covered by the assignment of rents").

20. Similarly, in In re Manuel Mediavilla, Inc., Case No. 13-02800 Docket No. 155, the Bankruptcy Court denied the debtors' proffer for adequate protection "disagree[ing] with the debtors' legal analysis that each month, as the tenants pay their rents, the creditor is obtaining a replacement lien" and that "the constant stream of rental income and the payments of real estate taxes, insurance, and other operating expenses are sufficient for adequate protection". The Mediavilla court also weighed that the "debtors ha[d] not justified how all their personal expenses benefit the value of the collateral and the estate, especially certain living expenses (e.g., housekeeping for $500 a month), which are unreasonable" (Case No. 13-02800 Docket No. 155).

21. The Debtor in the instant case has not sought authorization to use its cash collateral and nor has Condado 5 consented to its use. Thus, Condado 5 hereby moves the Court to prohibit such use. See 11 U.S.C. § 363(e).

22. Additionally, Condado 5 submits that it is not adequately protected in the instant case. The Debtor has been using Condado 5's cash collateral without its consent and without seeking authorization to do so in contravention to the requirements of the Bankruptcy Code. In fact, Condado 5 is not being serviced at all.

Prayer for Relief

WHEREFORE, Condado 5 respectfully prays the Court enter an order prohibiting the use of its cash collateral and for Condado 5 to seek and collect the proceeds from the milk quota directly from Suiza Dairy, Inc. and Vaquería Tres Monjitas, Inc., along with any other provision that is just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 5th day of January, 2019.

<u>Objection Language - PR LBR 9013-1(c)(1)</u>

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

<u>Certificate of Service</u>

We hereby certify on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case. A paper copy will be sent to Vaqueria Las Martas, Inc. by priority mail at: HC 05 Box 91635, Arecibo, PR 00612.

**Ferraiuoli** LLC

Attorneys for Condado 5
PO Box 195168
San Juan, PR 00919-5168
Phone: (787) 766-7000
Fax: (787) 766-7001

*/s/ Sonia E. Colón*
SONIA E. COLÓN
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

*/s/ Camille N. Somoza*
CAMILLE N. SOMOZA
USDC-PR No. 302908
csomoza@ferraiuoli.com