# CONTRATO DE PRÉSTAMO

Este contrato de préstamo (en adelante el "Contrato"), con fecha 12 de enero de 2005, se lleva a cabo entre **LAS MARTAS, INC.**, corporación creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con seguro social patronal número ████████, representada por su Presidente **DON JUAN MANUEL BARRETO GINORIO**, seguro social ████████, mayor de edad, casado con María Elena Hernández Ruiz, agricultor y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se hará constar mediante Certificación de Resolución debidamente firmada por el Secretario de la Corporación en igual fecha del presente otorgamiento mediante testimonio de autenticidad número 28,482 ante el notario público Francisco J. Arraiza Donate, (en adelante "el Deudor"); **DON JUAN MANUEL BARRETO GINORIO**, ████████████████ y **DOÑA MARIA ELENA HERNANDEZ RUIZ**, seguro social ████████ mayores de edad, casados entre sí, agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico (en adelante "Garantizadores Solidarios") y **BANCO POPULAR DE PUERTO RICO**, una corporación bancaria organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en Hato Rey, San Juan, Puerto Rico con número de identificación patronal 66-0561870 (en adelante el "Banco"), representada en este acto por su oficial **DON JOSÉ ALBERTO PÉREZ LÓPEZ**, seguro social ████████ mayor de edad, casado con Julia Ivette Batista González, banquero y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante Certificación de Resolución de la Junta de Directores del Banco Popular de Puerto Rico en sesión ordinaria celebrada el día quince (15) de julio de dos mil cuatro (2004) jurada y suscrita por Brunilda Santos de Alvarez, Secretaria Auxiliar de la Junta de Directores del Banco Popular de Puerto Rico, mediante affidavit número 4080 en San Juan, Puerto Rico el día quince (15) de julio de dos mil cuatro (2004) ante la notario público Paulette Lavergne Cuyar, cuyo Certificado de Resolución Yo, el Notario doy fe de haberlo tenido ante mí.

El Banco y el Deudor acuerdan contratar la facilidad de crédito que se describe más adelante, sujeto a, y de acuerdo con, los términos y condiciones que aquí se establecen.

## ARTÍCULO I
## TÉRMINOS Y CONDICIONES FINANCIERAS

**Sección 1.01. Definiciones:** Los términos no definidos en el texto del Contrato tendrán los respectivos significados que se indican en el Anejo 1.01(a) "Definiciones".

**Sección 1.02. (a)** El Banco acuerda conceder y el Deudor acuerda pagar el siguiente préstamo bajo los siguientes términos y condiciones financieras (en adelante, el "Préstamo"):

1. Tipo de préstamo y cantidad:

Préstamo a Término por la cantidad de UN MILLON OCHOCIENTOS CINCUENTA MIL DOLARES ($1,850,000.00) de principal.

2. Propósito del préstamo:

El Deudor ha solicitado del Banco un préstamo a término para consolidar deudas de la corporación y personales en un solo préstamo, cuyo propósito fue la compra de fincas, cuota, vacas y mejoras a las fincas y las facilidades, además de la compra de maquinaria y equipo para un total de $1,538,000.00 y un sobrante de los cuales $150,000.00 son para la compra de 5,000 cuartillos de cuota de leche, $72,000.00 para la compra de 36 novillas y $90,000.00 para capital de trabajo permanente y cubrir gastos inherentes en la transacción.

3. Tasa de interés aplicable:

El balance insoluto del principal devengará intereses diariamente a una tasa anual fluctuante igual a uno por ciento (1.00%) por debajo de la Tasa de Interés Preferencial ("Prime Rate").

4. Cantidad, frecuencia y número total de pagos de principal y de intereses y amortización de préstamo:

El desembolso será bajo un "Master Promissory Note" por ciento ochenta (180) días, no obstante el plan de pago comenzará treinta (30) días después del desembolso del Banco. El principal e intereses se pagarán en 59 plazos consecutivos de $14,900.00 cada uno, pagaderos mensuales, comenzando el _12_ de _febrero_ de _2005_, y así sucesivamente hasta e incluyendo el _12_ de _diciembre_ de _2009_, y un pago final del balance insoluto de principal e intereses a la fecha de vencimiento del Pagaré el _12_ de _enero_ de _2010_ o cualquier extensión a esta fecha que autorice el Banco (la "Fecha de Vencimiento").

El último pago podrá incluir además del principal e interés insolutos cualquier otro cargo contemplado en este contrato que el Banco haya impuesto y que quedó sin pagar.

(b) **Cálculo de Intereses**: Los intereses se calcularán sobre una base de interés simple utilizando una fórmula cuyo numerador es el número exacto de días naturales transcurridos y el denominador 365 días.

(c) **Cargos Aplicables**:

**Cargo Por Financiamiento**: El Deudor se obliga a pagar al Banco cargos por financiamiento a razón de $7,000.00 del Préstamo al momento del desembolso inicial del mismo. A opción del Banco, se aplicará este cargo por financiamiento en la fecha de cada renovación o extensión, si alguna, del Préstamo.

**Cargos Por Mora**: Por cada pago que esté en mora por más de _un_ día, el Deudor se obliga a pagar un cargo igual al _tres_ por ciento (3%) del monto del pago

2

moroso sujeto,  al artículo 3 Sección 3.02 inciso (g).

<u>Cargo por PAGO POR ADELANTADO</u>:


En la eventualidad de que otra institución bancaria y/o financiera, durante el término de este contrato, hiciera una oferta cuyo efecto pueda ser el de cancelar este contrato antes de su vencimiento, los deudores se comprometen a someter la oferta de la otra institución, por escrito, al Banco quien determinará si puede igualar la misma.  Si esta gestión no es realizada por los deudores, entonces el pago anticipado o adelantado que resulte eventualmente en el saldo del préstamo antes de la fecha convenida estará sujeto al cobro de un cargo por concepto de penalidad del cinco por ciento (5%).  Si el Banco no igualara la oferta sometida, entonces no se impondrá penalidad por pago anticipado.

(d) **Intereses por razón de incumplimiento (*Default Rate*):** De ocurrir cualquier Causa de Incumplimiento (según se dispone más adelante en este contrato),  el balance insoluto de principal devengará, inmediatamente y sin necesidad de notificación previa, intereses a razón de una tasa de interés dos por ciento (2%) sobre la tasa de interés pactada en la sección 1.02.3   (la "Tasa de Interés por Incumplimiento).  Esta Tasa de aplicará desde el momento en que ocurra la Causa de Incumplimiento hasta que la misma sea subsanada en forma y sustancia a la entera satisfacción y discreción del Banco.

La obligación del Deudor de repagar el Préstamo está evidenciada por un pagaré (el "Pagaré") a la orden del Banco, copia del cual forma parte de este contrato como Anejo 1.01(b).


Sección 1.03  <u>Partidas en Reserva</u>

El Deudor incluirá junto con el pago periódico al Banco de principal y/o intereses bajo el (los) Pagarés en el día en que venza dicho pago, hasta que el (los) Préstamo(s) sea(n) pagado(s) en su totalidad, una suma (los "Fondos de Plica") para el pago de: (1) contribuciones sobre la propiedad inmueble que sirve como Colateral del Préstamo y (2) primas por cualquier seguro requerido por el Banco.  Los Fondos de Plica serán depositados con el Banco a menos que el Deudor sea relevado de esta obligación.  En caso de tal relevo, el Deudor estará obligado a  pagar directamente las cantidades debidas por los conceptos antes mencionados y, proveerá al Banco recibos que evidencien tal pago dentro del tiempo que el Banco le requiera.  El Banco aplicará los Fondos de Plica para pagar las partidas mencionadas.  Si el Deudor deja de pagar alguna cantidad debida, el Banco podrá a su opción pagar la misma y el Deudor entonces vendrá obligado a repagar al Banco tal cantidad inmediatamente.   De no pagarla dentro de los diez (10) días subsiguientes, la cantidad pagada por el Banco se

añadirá al principal que adeuda el Deudor y estará sujeta al pago de intereses.

## ARTICULO II
## CONDICIONES PRECEDENTES AL DESEMBOLSO DEL PRÉSTAMO

**Sección 2.01**     Condiciones Precedentes al Desembolso del Préstamo. La obligación del Banco de hacer desembolsos bajo el Préstamo queda sujeta a las siguientes condiciones al momento de cada desembolso:

(a)     Que no exista una Causa de Incumplimiento bajo este Contrato o con respecto a cualquier otra Deuda del Deudor con el Banco o sus afiliadas, o una condición que, de no ser por el requisito de dar notificación y/o del transcurso del tiempo, constituya una Causa de Incumplimiento;

(b)     Que el Deudor haya cumplido con los convenios afirmativos y negativos en este Contrato;

(c)   Que las representaciones y garantías hechas por el Deudor en este Contrato sean correctas y ciertas al momento de realizarse cada desembolso bajo el Préstamo;

(d)     Que el Deudor haya entregado al momento del cierre o del desembolso particular los documentos que requiera el Banco en la forma y con el contenido que sea satisfactorio para éste.

## ARTICULO III
## LOS PRÉSTAMOS

### 3.01  Términos y Condiciones del Préstamo a Término

(a) Desembolso.  En la Fecha de Cierre, el Banco depositará los fondos producto del Préstamo mediante transferencia electrónica a la cuenta especificada por el Deudor.

(b) Los fondos desembolsados y depositados producto del préstamo serán utilizados para el propósito establecido en la sección 1.02.2

(c) Fecha de Pago. El Banco cobrará el principal y los intereses y otros cargos aplicables mediante un débito a la Cuenta Corriente los días correspondientes que se estipulan en el Pagaré (en adelante, la "Fecha de Pago").

### 3.02  Términos Generales

(a) Forma de Pago.  El Deudor autoriza al Banco a hacer los débitos

4

correspondientes directamente contra la Cuenta Corriente que se designe para estos propósitos o de cualquiera otra manera que el Banco especifique o autorice por escrito.

(b) **Servicio de la Deuda.** El Deudor se obliga a tener en la Cuenta Corriente en la Fecha de Pago cantidades suficientes para cumplir con el pago de las facilidades de crédito concedidas, y cualquier otro gasto o cargo que el Banco tenga derecho a cobrar bajo este Contrato. Si en la Cuenta Corriente no hubiera fondos suficientes en dicha fecha, el Banco podrá cobrar al Deudor el balance adeudado a través de cualquier otro medio, incluyendo débitos en otras cuentas en el Banco o en alguna de sus afiliadas. El Deudor pagará todas las cantidades adeudadas, sin derecho de compensación o reclamación contra el Banco, y sin deducciones por contribuciones o gastos de ningún tipo.

(c) **Fecha de Vencimiento.** Sujeto a que el Deudor cumpla con los términos y condiciones de este Contrato, el Préstamo estará vigente hasta la Fecha de Vencimiento que se estipula en la Sección 1.02.

(d) **Aplicación de los Pagos.** Los pagos, se aplicarán primero a cualquier interés acumulado y no pagado en orden del más antiguo al más reciente, luego a los cargos contemplados en el contrato (incluyendo cualquier pago que haya tenido que hacer el Banco a nombre del Deudor bajo las disposiciones de este contrato) que no hayan sido pagados, y luego al principal vencido o próximo a vencer del Préstamo, también del más antiguo al más reciente. Esto incluye los pagos realizados por el Banco en el ejercicio de su derecho bajo este contrato de cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas.

(e) **Abonos al principal antes de la Fecha de Vencimiento.** Luego de aplicar un pago de la forma en que se establece en el inciso (d) de esta sección, si hubiera algún sobrante, el mismo se aplicará a la amortización del principal no vencido (sujeto a la aplicación de cualquier cargo o penalidad por prepago que pueda imponer el Banco según las disposiciones de este contrato) en orden inverso de vencimiento. En caso de que el Banco imponga el cargo o penalidad por prepago, el sobrante se aplicaría primero contra dicho cargo.

(f) **Pago en la Fecha de Vencimiento.** En la Fecha de Vencimiento el Deudor deberá pagar al Banco el principal pendiente de pago del Préstamo y los intereses acumulados y no pagados sobre los mismos y cualquier otro cargo pactado en el contrato.

(g) **Pagos en Días No-Laborales.** Siempre que cualquier pago bajo este Contrato o bajo cualquiera de los Pagarés deba de hacerse en una fecha que no sea un Día Laborable, dicho pago deberá hacerse el próximo Día Laborable.

**Sección 3.03 Garantías y Colateral.**

5

(a)     Las obligaciones del Deudor bajo este Contrato, el Pagaré y los otros Documentos de Préstamo estarán garantizados mediante la Colateral que se detalla en el **Anejo A.**

(b)     Los Contratos de Colateral se mantendrán íntegros y vigentes durante la existencia de este Contrato y hasta que el Deudor satisfaga en su totalidad las Obligaciones asumidas bajo los Documentos de Préstamo y durante cualquier extensión o renovación o conversión de los mismos.

## ARTICULO IV
## REPRESENTACIONES Y GARANTÍAS

**Sección 4.01**     Representaciones y Garantías del Deudor. El Deudor por la presente le representa y garantiza al Banco que:

(a)     El otorgar este Contrato y los Documentos de Préstamo y cumplir con sus respectivos términos: (i) no causará que viole ninguna ley, reglamento, orden judicial, interdicto o sentencia aplicable; (ii) no causará que viole o incumpla los términos de cualquier contrato o acuerdo del cual sea parte y/o que afecte sus propiedades; (iii) no violará, ni será incompatible con, las cláusulas de su Certificado de Incorporación o de sus estatutos (de ser el Deudor una corporación) o de su acuerdo de constitución de sociedad o fideicomiso (de ser el Deudor una sociedad o fideicomiso); (iv) redundará en su beneficio; y (v) no resultará en su insolvencia;

(b)     No existe requisito de   autorización, consentimiento, licencia, permiso, registro o presentación de tribunal o Entidad Gubernamental alguna, ni de ninguna junta o foro, para proceder al otorgar y cumplir con este Contrato y los otros Documentos de Préstamo;

(c)     No existe acción, demanda, procedimiento o reclamación ante ningún tribunal o Entidad Gubernamental, ni ante ningún otro foro, ni, de acuerdo con su mejor conocimiento, la posibilidad de tal, que pudiera afectar la condición financiera del Deudor o sus propiedades, negocios, operaciones o activos;

(d)     Ninguna información, anejo o informe ofrecida al Banco en relación con la preparación, otorgamiento, y negociación de este Contrato y los otros Documentos de Préstamo, contiene declaraciones falsas u omite declarar algún hecho que pueda afectar la veracidad de dicha información, y no existen hechos que, individualmente o tomados junto con otros factores, puedan afectar adversamente la condición financiera del Deudor o sus propiedades, negocios, operaciones o activos;

(e)     Es una entidad debidamente constituida, válidamente existente y autorizada a operar bajo las leyes de la jurisdicción  de su organización y posee todos los permisos, licencias y franquicias necesarias para operar sus negocios en Puerto Rico;

(f)    Posee todas las facultades, poderes y autorizaciones necesarias para otorgar este Contrato y los otros Documentos de Préstamo, para incurrir en las obligaciones estipuladas en este Contrato y en los otros Documentos de Préstamo, para tomar prestada la cantidad del Préstamo que se establece en este Contrato, para emitir el (los) Pagaré(s) que evidencia(n) dichas obligaciones, para utilizar los fondos obtenidos bajo el Préstamo para los usos aquí especificados, y para cumplir con los términos y condiciones contenidos en este Contrato, en el (los) Pagaré(s) y en los otros Documentos de Préstamo;

(g)    Este Contrato y los demás Documentos de Préstamo han sido debidamente autorizados por el Deudor y constituyen obligaciones válidas y legales del mismo, exigibles contra éste de conformidad con sus respectivos términos;

(h)    No ha, y/o no tiene conocimiento de que ninguno de sus predecesores en interés hubiera, almacenado, generado, manufacturado, refinado, transportado, producido o tratado desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas en las propiedades del Deudor, en violación de cualquier disposición de ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable y/o que requiera alguna actuación para corregir alguna situación  que conlleve un costo o gasto sustancial bajo las disposiciones de cualquier ley, ordenanza, regla, reglamentación, orden, sentencia, decreto o permiso que fuera aplicable. No han ocurrido, y/o no tiene conocimiento de que existan, derrames, descargas, filtraciones, emisiones, inyecciones, escapes, o liberaciones sustanciales o materiales de desperdicios tóxicos, desperdicios sólidos, desperdicios peligrosos o sustancias peligrosas, en las propiedades del Deudor o en el ambiente que rodea  dichas propiedades.  Los términos "desperdicios tóxicos", "desperdicios sólidos", "desperdicios peligrosos" y "sustancias peligrosas" tendrán el significado dispuesto en cualquier disposición de ley o reglamentación aplicable del Estado Libre Asociado de Puerto Rico, del Gobierno Federal o estatal o de un país extranjero, relacionadas con la protección del ambiente;

(i)    De ser aplicables o necesarias, posee todas las patentes, derechos sobre patentes, marcas, licencias, franquicias, autorizaciones, permisos y otros derechos necesarios para conducir sus negocios tal y como los conduce al presente, y como se propone conducirlos en el futuro, sin menoscabar o violar los derechos de terceros;

(j)    Ha cumplido con todas las leyes y reglamentos de las Entidades Gubernamentales con jurisdicción sobre sus negocios y no está incumpliendo ninguna orden, mandamiento, orden de entredicho ni decreto de algún tribunal, Entidad Gubernamental o de cualquier otro foro;

(k)    Ha cumplido y cumple con todas sus obligaciones bajo todo contrato, hipoteca, arrendamiento, fideicomiso u otro acuerdo del cual el Deudor es parte o bajo el cual cualquiera de sus propiedades o activos puedan verse afectadas;

7

(l)     Su estado de situación y el estado de ganancias y pérdidas que ha entregado al Banco, (i) son correctos y representan objetivamente su condición financiera y los resultados de sus operaciones; (ii) el Deudor no ha contraído obligaciones directas o contingentes, después de la fecha del estado de situación, que no hayan sido divulgadas al Banco por escrito o reflejadas a través de un estado de situación interino o anejo; (iii) tanto los estados como los estados interinos han sido preparados de acuerdo a los principios de contabilidad generalmente aceptados ("GAAP" por sus siglas en inglés) aplicados consistentemente durante todos los períodos que comprenden los mismos;

(iv) no ha ocurrido un cambio sustancial adverso en los activos, pasivos, propiedades, negocios, condición financiera o cualesquier otra, o prospectos del Deudor desde la fecha de cierre de los estados de situación y de ganancias y pérdidas;

(m)     Posee título de dominio sobre todos los bienes sobre los cuales ha constituido una hipoteca o que ha dado en Colateral al Banco, y tiene derecho a enajenarlos y gravarlos; y

(n)     Ha radicado todas las planillas de contribuciones que requieren las leyes y reglamentos aplicables, y ha pagado (o tiene un plan de pagos debidamente aprobado por las Entidades Gubernamentales correspondientes) todas las contribuciones sobre ingresos, contribuciones y retenciones patronales, contribuciones sobre la propiedad, patentes, arbitrios y cualquier otro cargo o penalidad atribuibles a las mismas que deba pagar o que hayan sido impuestos contra el Deudor o sobre sus propiedades por las Entidades Gubernamentales correspondientes.

## ARTICULO V
## CONVENIOS

**Sección 5.01     Convenios Afirmativos.** Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance del Préstamo u otras obligaciones del Deudor bajo los términos de este Contrato o los demás Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier adelanto bajo el Préstamo, el Deudor se compromete a lo siguiente:

(a)     Pagar puntualmente el principal, los intereses y cualquier otro cargo del Préstamo;

(b)     Llevar a cabo o gestionar, por su cuenta y a su cargo, todos los actos o cosas necesarias, presentes o futuras, requeridas bajo las leyes o reglamentos aplicables con relación al cumplimiento de sus obligaciones bajo los Documentos de Préstamo;

      (c)    Pagar todas las contribuciones e impuestos que le sean aplicables a sus ingresos o ganancias, o sobre cualquiera de sus propiedades, o relacionadas con cualquiera de sus actividades o negocios (incluyendo retenciones y contribuciones sobre nómina), antes de la fecha en que dichas contribuciones e impuestos comiencen a devengar intereses, recargos o penalidades y se impongan multas, embargos, cargas y/o gravámenes similares por falta de pago. No obstante, el Deudor no vendrá obligado a pagar ninguna contribución o impuesto cuyo pago esté impugnando de buena fe y mediante el procedimiento correcto. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, pagar tales contribuciones e impuestos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará al Banco el monto de dicho desembolso tan pronto le sea requerido. El Banco podrá, además, y sin el previo aviso a o consentimiento de, el Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o lo(s) Garantizador(es) mantengan en el Banco o con sus afiliadas;

      (d)    Permitir que el Banco o cualquiera de sus agentes o representantes examinen, resuman y copien sus récords, registros y libros de contabilidad, y que visiten las propiedades del Deudor y que discutan con terceras personas los asuntos, finanzas y cuentas del Deudor de tiempo en tiempo y según sea razonable;

      (e)    Notificar inmediatamente al Banco en caso de que surja cualquier reclamación, demanda o procedimiento llevado en su contra o, del cual el Deudor tenga conocimiento, que pudiera tener un Efecto Materialmente Adverso sobre las propiedades, negocios, operaciones y activos del Deudor, o sobre su condición financiera;

      (f)    Mantener vigentes, renovar y proteger todos los derechos, poderes, privilegios, licencias, permisos y franquicias requeridas para continuar operando sus negocios incluyendo aquellas que emanen por contrato o aquellas requeridas por Entidades Gubernamentales;

      (g)    Cumplir y observar todas las leyes y reglamentos aplicables, tanto federales como locales, incluyendo, pero sin limitarse a, las leyes y reglamentos aplicables en cuanto a asuntos laborales y ambientales, así como con cualquier ordenanza, regla o reglamento promulgado bajo dichas leyes y reglamentos;

      (h)    Mantener la Cuenta corriente principal con el Banco;

      (i)    Entregar al Banco dentro de ciento veinte (120) días a partir del cierre de su año fiscal, su estado de situación y su estado de ganancias y pérdidas y superávit compilados, revisados o auditados, (según especifique o autorice el Banco a su absoluta discreción) por contadores públicos autorizados reconocidos y aceptables al Banco;

(j)     De ser aplicable, entregar al Banco dentro de los ciento veinte (120) días siguientes al cierre de cada año fiscal, estados financieros personales, o de la entidad jurídica, según sea el caso, de cada Garantizador;

(k)     Entregar, en la forma y en las fechas en que así se lo requiera el Banco, un certificado o informe sobre envejecimiento de las cuentas a cobrar y de las cuentas a pagar, debidamente certificado como correcto por un oficial autorizado del Deudor;

(l)     Otorgar todos aquellos documentos, contratos, instrumentos o acuerdos que sean necesarios, a juicio del Banco, para llevar a cabo las transacciones contempladas en los Documentos de Préstamo;

(m)     Pagar o rembolsar al Banco tan pronto le sea requerido, los gastos relacionados con los honorarios de consultores ambientales y de abogados, estudios ambientales, acciones de remoción de contaminantes, restauración, mitigación y/o remediación ambiental y cualquier otro gasto que el Banco razonablemente entienda se tenga que incurrir como resultado de cualquiera de las situaciones mencionadas en el párrafo 4.01(i). El Banco podrá, además, y sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas;

(n)     Solicitar, mantener, conservar y renovar las pólizas de seguro requeridas, a saber:_____Inundación,___x___Fuego,___x___Terremoto,_____robo ___x___huracán, _____ Interrupción de Negocios, _____ Lucro Cesante, _____ Key Man, _____, Otras: _____ ; y aquellas que de conformidad con los Documentos de Préstamo el Banco le requiera de tiempo en tiempo para cubrir otros riesgos, que provean cobertura suficiente (a juicio del Banco) y que sean las que acostumbran mantener compañías del tamaño y naturaleza similares a las del Deudor y que sean aceptables al Banco. Tales pólizas deberán contener un endoso o cesión a favor del Banco que sea aceptable a éste. Si el Deudor incumple esta obligación, el Banco podrá, a su entera opción, obtener y pagar tales pólizas y endosos sin necesidad de notificarle al Deudor y sin más consentimiento del Deudor que el presente consentimiento, en cuyo caso el Deudor reembolsará el monto total pagado por el Banco tan pronto le sea requerido. El Banco podrá, además, sin el previo consentimiento del Deudor, cargar o debitar dichas sumas en cualquier cuenta o depósito que el Deudor y/o los Garantizadores mantengan en el Banco o sus afiliadas;

(o)     Mantener en buen estado todas las propiedades que le pertenecen, incluyendo pero sin limitarse a, aquellas que forman parte de la Colateral, y realizar todas aquellas mejoras necesarias para conservarlas;

(p)     De aplicarle al Deudor las disposiciones de la ley federal conocida como ERISA ("Employee Retirement Income Security Act of 1974") según enmendada, el Deudor representa y garantiza que ha cumplido cabalmente con todas las disposiciones de la misma y que no ha ocurrido ni existe ningún evento reportable

("Reportable Event" según se define en ERISA) con respecto a cualquier plan de retiro o pensiones del Deudor que esté reglamentado por ERISA.

(q)  Utilizar los fondos provenientes del financiamiento aquí otorgado para los usos y propósitos que se mencionan en la sección 1.02 del Contrato.

Sección 5.02  <u>Convenios Negativos</u>.  Mientras se mantengan vigentes las obligaciones del Deudor bajo este Contrato y/o los otros Documentos de Préstamo, y mientras quede pendiente de pago cualquier balance del Préstamo u otras obligaciones del Deudor bajo los términos de este Contrato o los otros Documentos de Préstamo, o mientras quede vigente cualquier obligación del Banco bajo este Contrato o el Pagaré de desembolsar cualquier adelanto bajo el Préstamo, el Deudor se compromete a no hacer lo siguiente sin el previo consentimiento escrito del Banco, cuyo consentimiento no será denegado irrazonablemente:

(a)  Constituir, asumir o permitir que exista cualquier hipoteca, gravamen y/o carga sobre todo o cualquier porción de su propiedad, bienes o capital, existentes a la fecha de, o adquiridos con posterioridad a, la Fecha de Cierre y que sirvan como Colateral;

(b)  Asumir, garantizar, endosar o de cualquier manera responsabilizarse por las obligaciones de cualquier otra persona, entidad o corporación, existente o creada con posterioridad a la Fecha de Cierre, excepto por los endosos de instrumentos negociables para depósito o cobro o transacciones similares en el curso ordinario de su negocio;

(c)  Cambiar su actual personalidad jurídica,  cambiar o permitir cambios en la composición de sus accionistas o socios o personal gerencial, enmendar sus artículos de incorporación o sus estatutos (de ser el Deudor una corporación) o su acuerdo de sociedad (de ser el Deudor una sociedad), o fusionarse, liquidarse o vender una parte sustancial o la totalidad de sus activos;

(d)  Invertir sus fondos en o adquirir, otras corporaciones, sociedades o entidades;

(e)  Prestar o adelantar fondos a cualquier empleado, oficial y/o director del Deudor o a cualquier otra persona o entidad;

(f)  Cambiar la naturaleza de sus negocios;

(g)  Incurrir en Deuda adicional que no sea Deuda que normalmente se incurre en el curso ordinario de los negocios; y

(h)     Declarar o pagar [dividendos] ya sea en efectivo, en especie o en acciones, [distribuciones] a [accionistas, socios, miembros o beneficiarios] del Deudor, hacer cualquier distribución sobre sus [acciones o participaciones], o reservar fondos o activos para ese propósito o adquirir de cualquier manera sus [acciones o participaciones], o algún interés en el Deudor o reservar fondos o activos para ese propósito y

(i)     Vender, ceder, arrendar, permutar, transferir o de cualquier otra forma disponer de sus activos existentes a la fecha de, o adquiridos con posterioridad, a la Fecha de Cierre.

## ARTICULO VI
## INCUMPLIMIENTO

Sección 6.01     Causas de Incumplimiento.  En caso de que ocurra, o continúe ocurriendo, cualquier situación de las descritas en esta Sección 6.01, las obligaciones del Banco bajo este Contrato terminarán automáticamente y las sumas del principal, intereses y cargos acumulados sobre el Pagaré y todas las demás obligaciones del Deudor bajo este Contrato y los otros Documentos del Préstamo serán inmediatamente líquidas y exigibles, sin que se requiera acción, notificación, protesto, presentación, demanda o aviso de parte del Banco al Deudor o a ninguna otra persona natural o jurídica, todos los cuales se renuncian expresamente.  Cada uno de los siguientes eventos constituirá una "Causa de Incumplimiento":

(a)     Que el Deudor incumpla con el pago de principal, intereses o cargos bajo el (los) Pagaré(s), o con el pago de cualquier otra suma adeudada al Banco bajo este Contrato o bajo cualquier otro Documento de Préstamo, en la fecha en que dicho pago venza;

(b)     Que la validez, legalidad u otorgamiento de este Contrato, de(l) (los) Pagaré(s) o de cualquiera de los otros Documentos de Préstamo sea cuestionado por el Deudor y/o el(los) Garantizador(es),o el Deudor y/o el(los) Garantizador(es) niegue(n) que tiene(n) responsabilidades u obligaciones bajo este Contrato, el Pagaré o cualquiera de los otros Documentos de Préstamo;

(c)     Que el Deudor o cualquier Garantizador sea declarado insolvente o en quiebra, o admita por escrito su incapacidad para pagar sus deudas según éstas venzan, o haga una cesión de sus bienes para beneficio de sus acreedores; o el Deudor o cualquier Garantizador solicite o consienta a, el nombramiento de un custodio, síndico u oficial similar para administrar o custodiar o tomar posesión de la totalidad o una parte sustancial de sus bienes; o el Deudor o cualquier Garantizador instituya (por petición, solicitud, contestación, consentimiento, o de otra forma) cualquier procedimiento de quiebra, insolvencia, composición, reorganización, arreglo, reajuste de deudas o cualquier otro procedimiento similar bajo las leyes o reglamentos de cualquier jurisdicción; o que cualquier sentencia, orden, embargo, providencia

12

judicial o administrativa, o remedio similar sea emitido contra cualquier propiedad o bien del Deudor o de cualquier Garantizador, y el mismo no sea dejado sin efecto, cancelado o sustituido por una fianza dentro de los treinta (30) días calendarios siguientes a su emisión;

(d) Que el Deudor y/o cualquier Garantizador incumpla o viole cualquiera de sus obligaciones con el Banco o cualquiera de los términos, acuerdos, cláusulas, declaraciones, garantías o condiciones de su parte incluidos en este Contrato (pero sin incluir las violaciones cubiertas por el inciso (a) de esta sección 6.01), en los otros Documentos de Préstamo y/o en cualquier otro acuerdo o contrato con el Banco o instrumento entregado al Banco, y dicho incumplimiento o violación no se remediare dentro de los treinta (30) días calendarios siguientes a la notificación de dicho incumplimiento o violación; o

(e) Que cualquier declaración o garantía que haya hecho el Deudor o cualquier Garantizador en este Contrato, en cualquiera de los otros Documentos de Préstamo o en cualquier certificado, instrumento, contrato o declaración hecha u otorgada en relación con este Contrato o cualquiera de los otros Documentos de Préstamo, sea sustancialmente incorrecta;

(f) Que exista un gravamen o carga sobre la Colateral que no sea de las permitidas a la fecha de este contrato o de las creadas en beneficio del Banco para garantizar las obligaciones del Deudor bajo los Documentos de Préstamo;

(g) Que ocurra cualquier evento que cause que se acelere la fecha de vencimiento de cualquier otra Deuda (excluyendo el Préstamo) del Deudor; o

(h) Que ocurra un Efecto Materialmente Adverso.

(i) Que el Deudor no utilice los fondos provenientes de este financiamiento, o parte de ellos, en los usos y propósitos que se mencionan en la Sección 1.02 del Contrato;

(j) La radicación de cargos contra el Deudor o contra cualquiera de los Garantizadores o el recibo de alguna notificación por el Banco de alguna investigación gubernamental en relación con cualquier asunto que pueda resultar en la confiscación o incautación ("forfeiture") de bienes del Deudor o de cualquiera de los Garantizadores.

## ARTICULO VII
## REMEDIOS

**Sección 7.01 Remedios en General.** En el caso que ocurra o continúe ocurriendo una o más de las Causas de Incumplimiento especificadas en la Sección 6.01, el Banco podrá tomar cualquier acción en ley o equidad para cobrar las cantidades vencidas o por vencer bajo el Pagaré o para hacer cumplir las obligaciones,

13

acuerdos o compromisos del Deudor bajo este Contrato o bajo cualquiera de los otros Documentos de Préstamo o bajo cualquier otro documento relacionado a este Contrato o dichos documentos.

**Sección 7.02    Remedios Acumulativos.** Los remedios y derechos aquí concedidos al Banco no se considerarán exclusivos de cualquier otro remedio o remedios disponibles; todos y cada uno de dichos remedios serán acumulativos y concurrentes y serán adicionales a cualquier otro remedio especificado en este Contrato o existente en ley o equidad. Cualquier demora u omisión en el ejercicio de cualquier derecho o acción basada en el incumplimiento del Deudor, o la omisión del Banco de insistir en el cumplimiento estricto de cualquiera de los acuerdos y compromisos del Deudor que se detallan en este Contrato o en los otros Documentos de Préstamo o de ejercitar cualquier derecho y/o remedio en caso de incumplimiento por el Deudor, no afectará ninguno de los antedichos derechos o acciones del Banco, ni se considerará o se tendrá por relevo o renuncia de los derechos a insistir, hacer cumplir, ejercitar o solicitar, mediante interdicto o cualquier otro remedio apropiado, en ley o equidad, el cumplimiento estricto por el Deudor con todos los compromisos, acuerdos y condiciones contenidos en este Contrato y en los otros Documentos de Préstamo, o del derecho del Banco a ejercitar cualquiera de dichos derechos o remedios si se repitiera el incumplimiento por parte del Deudor.

**Sección 7.03    Renuncias.** En caso de que el Deudor incumpla cualquier compromiso o acuerdo incluido en este Contrato o en cualquiera de los otros Documentos de Préstamo y sea relevado de tal obligación o acuerdo (cuyo relevo será efectivo solamente si se hace por escrito y está firmado por el Banco), dicho relevo se limitará a esa violación o evento en particular y no se considerará, bajo ninguna circunstancia, como un relevo del cumplimiento en cualquier otra situación..

**ARTICULO VIII
INDEMNIZACIÓN**

**Sección 8.01.**    El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda reclamación, daño, sentencia, penalidad, costo y gasto (incluyendo aquellos gastos y honorarios de abogado que resulten por razón de haber ejercido el Banco sus derechos bajo esta cláusula) que surja, directa o indirectamente, de las actividades del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, o que surjan, directa o indirectamente, de la violación por parte del Deudor, sus predecesores y sucesores en interés, o de aquellas terceras personas, naturales o jurídicas, con las que el Deudor sostenga una relación contractual, de cualquier ley o reglamento, incluyendo, pero sin limitarse a, cualquier ley o reglamento sobre protección ambiental, independientemente de que dichas reclamaciones fueren presentadas por una Entidad Gubernamental o cualquier otra persona, natural o jurídica. No obstante lo dispuesto en cualquier otro apartado de este

14

Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.

**Sección 8.02.** El Deudor acuerda defender, indemnizar, librar de toda responsabilidad y proteger al Banco de toda demanda, litigación, acción, procedimiento administrativo, sentencia, reclamación, daños, costos o penalidades (incluyendo, sin limitación, honorarios de abogados y costas razonablemente incurridas) que se inste o se imponga en contra de o se incurra por el Deudor por cualquier motivo, debido a la presencia de sustancias tóxicas o peligrosas, así como de hidrocarburos, petróleo, aceites y sus derivados, según estos términos son definidos por las Leyes Ambientales, que afecten las propiedades del Deudor o que se originen o emanen de las propiedades del Deudor. El Deudor se compromete a cumplir fielmente con las Leyes Ambientales y a no depositar o causar que se deposite en sus propiedades sustancias tóxicas o peligrosas según éstas son definidas en dichas Leyes Ambientales, durante el término del presente Contrato. No obstante lo dispuesto en cualquier otro apartado de este Contrato, las obligaciones del Deudor bajo esta cláusula de indemnización sobrevivirán la terminación de este Contrato.

ARTICULO IX
### OTROS TÉRMINOS MISCELÁNEOS

**Sección 9.01 Terminación.** De no existir más crédito disponible al Deudor bajo este Contrato o durante cualquier extensión o renovación del mismo, si el Deudor ha pagado al Banco la totalidad del principal e intereses bajo el Pagaré y todas las demás cantidades adeudadas al Banco bajo los Documentos de Préstamo, y si el Deudor está cumpliendo con sus deudas y obligaciones con las demás afiliadas del Banco, entonces todos los compromisos, acuerdos y otras obligaciones del Deudor se extinguirán y, en consecuencia, las propiedades del Deudor que hayan sido gravadas en virtud de este Contrato y los otros Documentos de Préstamo se entregarán al Deudor y/o los Contratos de Colateral serán entregados al Deudor para ser cancelados a su costo.

**Sección 9.02 Aviso de las Notificaciones.** Todas las notificaciones, requerimientos, instrucciones y otras comunicaciones requeridos bajo este Contrato se harán por escrito (incluyendo comunicaciones por facsímile) y serán enviados por correo o facsímile o entregadas a la mano a la parte a las siguientes direcciones:

**DEUDOR:**
  LAS MARTAS, INC.
  Atención: Sr. Juan Manuel Barreto Ginorio
  HC 05 Box 91635
  Arecibo, Puerto Rico 00612
  Tel. (787) 640-4972 (787) 878-7277

BANCO:
BANCO POPULAR DE PUERTO RICO
Atención: CBC Arecibo-Manatí
Clave de envío: 411
Sra. Nilsa Iris Cruz Capetillo
PO Box 362708
San Juan, Puerto Rico 00936-2708
Tel. (787) 854-1550
Fax: (787) 854-4955

o a cualquier otra dirección que de tiempo en tiempo sea notificada por escrito a la otra parte, cumpliendo con los requisitos para notificación especificados en esta sección. Todas las antes mencionadas notificaciones, requerimientos, instrucciones y otras comunicaciones se considerarán efectivas en el momento en que se depositen en el correo, o se entreguen por máquina de facsímile, según sea el caso, dirigidos de la manera antes especificada.

Sección 9.03 Pago de Gastos. El Deudor acuerda pagar a la presentación los gastos y honorarios de abogado, tasadores, peritos, consultores, y auditores con relación a la preparación, otorgamiento y entrega de este Contrato, el Pagaré, los otros Documentos de Préstamo, y cualquier otro instrumento o documento al cual se hace referencia o se relaciona con este Contrato, el Pagaré y los otros Documentos de Préstamo, o cualquier enmienda a éstos.

Sección 9.04 Cesión; Enmienda. El Deudor no podrá ceder sus derechos y obligaciones bajo este Contrato. No obstante, el Banco podrá ceder sus derechos y obligaciones bajo este Contrato, total o parcialmente, sin el consentimiento del Deudor y todos los términos y disposiciones del mismo beneficiarán de la misma forma a sus sucesores y cesionarios. Este Contrato no podrá ser alterado o enmendado a menos que sea a través de otro documento o acuerdo escrito otorgado por ambas partes.

Sección 9.05 Ley que Rige. Este Contrato, el Pagaré y todos los otros Documentos de Préstamo se regirán e interpretarán de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico.

Sección 9.06 Separación de las Cláusulas. Si alguna cláusula de este Contrato resultare inválida, ilegal o no pudiera hacerse valer en Puerto Rico, no se afectará por ello la validez y efectividad de las demás cláusulas y condiciones del Contrato ni se afectará la validez y efectividad de dicha cláusula y las demás cláusulas en cualquier otra jurisdicción en que la cláusula se considere válida.

Sección 9.07 Encabezamientos. Los encabezamientos de las secciones y cláusulas en este documento se incluyen para referencia y conveniencia y no

constituirán parte alguna de este Contrato. Las palabras utilizadas en este Contrato se interpretarán en el género o número que las circunstancias ameriten.

    **Sección 9.08 Derecho de Compensación**. Nada de lo dispuesto en este Contrato se considerará como una renuncia al derecho de compensación ("set-off") que pueda tener el Banco conforme a las leyes aplicables.

    **Sección 9.09 <u>Renuncia a Juicio por Jurado</u>.** El Banco y el Deudor renuncian a cualquier derecho que tengan a la celebración de un juicio por jurado en cualquier acción o procedimiento que se inste para ejercer o defender sus respectivos derechos bajo, o que de alguna manera se relacionen con, este Contrato, el Pagaré y los otros Documentos de Préstamo.

    **Sección 9.10 <u>Jurisdicción</u>.** El Deudor acuerda someterse a la jurisdicción de los tribunales estatales de Puerto Rico o el Tribunal de Distrito Federal para el Distrito de Puerto Rico.

    **POR TODO LO CUAL**, las partes otorgan este Contrato, en Hatillo, Puerto Rico en la fecha indicada al principio del mismo.

LAS MARTAS, INC.
Por: Juan Manuel Barreto Ginorio
Presidente

BANCO POPULAR DE PUERTO RICO
Por: José Alberto Pérez López
Oficial

JUAN MANUEL BARRETO GINORIO

MARIA ELENA HERNANDEZ RUIZ

Affidávit Núm. 28,491

    Reconocido y suscrito ante mí por **DON JUAN MANUEL BARRETO GINORIO**, seguro social⬛⬛⬛⬛⬛⬛⬛, mayor de edad, casado con María Elena Hernández Ruiz, en su carácter de Presidente de Las Martas, Inc., agricultor y vecino de Arecibo, Puerto Rico; **DON JUAN MANUEL BARRETO GINORIO** , seguro social ⬛⬛⬛⬛⬛⬛ y

**DOÑA MARIA ELENA HERNANDEZ RUIZ** , seguro social ███████, mayores de edad, casados entre sí, agricultor él, ama de casa ella y vecinos de Arecibo, Puerto Rico y por **DON JOSÉ ALBERTO PÉREZ LÓPEZ**, █████████████████, mayor de edad, casado con Julia Ivette Batista González, en su carácter de Oficial del Banco Popular de Puerto Rico, banquero y vecino de Arecibo, Puerto Rico; a quienes doy fe de conocer personalmente.

En Hatillo, Puerto Rico a 12 de enero de 2005.

NOTARIO PÚBLICO



ANEJO A

## COLATERAL

COLATERAL

_____  **Bienes Incorporales**: Todos los bienes incorporales según dicho término está definido en la Ley de Transacciones Comerciales, que posea a la Fecha de Cierre o adquiridos en el futuro por el Deudor y, si aplicable, por el Garantizador.

__X__  **Bienes Inmuebles**: La(s) propiedad(es) descrita(s) en la(s) hipoteca(s) que se identifica(n) bajo el Apartado B de este Anejo A y todos los edificios, estructuras, bienes inmuebles por su destino, adiciones, extensiones, modificaciones, reparaciones, reemplazos y mejoras ahora o que en el futuro sean erigidas o localizadas en dicha(s) propiedad(es).

__X__  **Contratos**: Todos los contratos, según dicho término está definido en la Ley de Transacciones Comerciales, que estén en vigor a la Fecha de Cierre, o que en el futuro sean pactados por el Deudor, y si aplicable, por el Garantizador, y según los mismos puedan ser enmendados, completados o de otra forma modificados de tiempo en tiempo.

__X__  **Cuentas**: Todas las Cuentas, según dicho término se define en la Ley de Transacciones Comerciales, existentes, o en el futuro adquiridas por el Deudor, y si fuera aplicable, por el Garantizador, que constituyan un derecho a recibir un pago de dinero. Incluye, pero no está limitado, a todas las sumas a recibirse con relación a (1) cualquier préstamo o adelanto (2) por la venta o disposición de Inventario o Equipo u otros bienes vendidos o arrendados o por servicios prestados, (3) todas las sumas vencidas o por vencer bajo cualquier garantía (incluyendo una carta de crédito) del precio de compraventa del Inventario o Equipo vendido y (4) todos los reintegros por contribuciones. En todo caso significará e incluirá, pero no se limitará a, (i) todas las cuentas por cobrar, inversiones con certificado, inversiones sin certificado, instrumentos, documentos y papel financiero, (ii) todos los derechos a recibir un pago por bienes vendidos o arrendados o por servicios prestados, (iii) todos los derechos, títulos e intereses en y sobre cualquier bien, cuya venta origine una cuenta, (iv) todas las garantías, endosos, e indemnizaciones sobre o por cualquier cuenta, (v) todos los poderes para otorgar o firmar cualquier evidencia de récords, tarjetas, y facturas relacionadas con cualquier cuenta, (vi) toda evidencia de radicación de declaraciones de financiamiento y cualquier otro documento y la radicación de cualquier instrumento en relación con cualquier cuenta y enmiendas a los mismos, notificaciones a otros acreedores o acreedores garantizadores, y certificados de los oficiales encargados de las radicaciones u otras inscripciones, (vii) toda la información de crédito, reporte y memoranda relacionada con cualquier cuenta, (viii) todos aquellos escritos relacionados con cualquier cuenta, (ix) todas las pólizas de seguros o derechos

23

similares relacionados con cualquier cuenta, y (x) todo el producto de cualquier cuenta. En verdad que esto no está claro.

_____    **Derechos Contractuales**: Todos los derechos del Deudor, y si fuera aplicable, del Garantizador, bajo cualquier Contrato, incluyendo, sin limitación, (a) todos los derechos a recibir sumas vencidas o por vencer en cuanto a los mismos, (b) todos los derechos a recibir sumas por concepto de daños que surjan como resultado de o por incumplimiento de los mismos, y (c) todos los derechos a ejercer todos los remedios bajo los mismos.

_____    **Dinero en Efectivo**: Toda moneda de curso legal en los Estados Unidos de América, u otros países del mundo.

_____    **Equipo**:    Todo equipo, según se define dicho término en la Ley de Transacciones Comerciales, perteneciente a, o sobre los cuales tenga un interés el Deudor y, si fuera aplicable, el Garantizador, a la fecha de este Contrato o en el futuro. Incluye todas las accesiones, adiciones, sustituciones o reemplazos y el producto de ellos, incluyendo, pero no limitado a toda aquella propiedad adherida o a adherirse al equipo (incluyendo todas las accesiones, productos de, reemplazos de y sustituciones de cualquiera de los bienes anteriormente mencionados.

_____    **Instrumentos**:    Todos los instrumentos, papel financiero o cartas de crédito según dichos términos se definen en la Ley de Transacciones Comerciales, incluyendo, pero no limitado a, pagarés, cheques, letras de cambio, y documento cambiario aceptado).

_____    **Inventario**:  Todo inventario según dicho término se define en la Ley de Transacciones Comerciales.   Incluye aquella propiedad retenida para arrendamiento (incluyendo arrendamientos a subsidiarias), todos los bienes obtenidos en permuta del Inventario, y cualquier producto final o en proceso derivado de tal Inventario, todas las sustancias, si alguna, que se mezclen con o añadan al mismo. Incluye también todo el inventario que se encuentre en el lugar de operaciones (o en cualquier otra localización en la que haga negocios), o que de otra forma sea utilizada en la operación de cualquiera de los negocios. Además incluye,  todas las adiciones, accesiones y reemplazos a los mismos, los productos del inventario y documentos de los mismos, y los bienes que son devueltos o reposeídos.

_____    **Inversión**: Toda inversión según dicho término se define en la Ley de Transacciones Comerciales que adquiera ahora o en el futuro el Deudor y, si fuera aplicable, el Garantizador.

_____    **Producto**: Todo producto según dicho término se define en la Ley de Transacciones Comerciales con respecto a la Colateral.  Incluirá, pero no se limitará a, (i) los pagos parciales o totales de una póliza de seguro, sentencia, indemnización, garantía pagada respecto a cualquier parte de la Colateral; (ii) todos los pagos hechos

24

de cualquier forma en relación con cualquier readquisición, confiscación, expropiación forzosa, embargo, incautación, o confiscación de todo o parte de la Colateral por cualquier Entidad Gubernamental; y (iii) cualquier cantidad pagada o a pagarse bajo o en conexión con cualquier parte de la Colateral.

_____ __ **Productos Agrícolas**: Todos los productos agrícolas según dicho término se define en la Ley de Transacciones Comerciales, perteneciente a o sobre los cuales tenga un interés el Deudor, y según sea aplicable, el Garantizador, a la fecha de este Contrato, o en el futuro.

B.      Contratos de Colateral:

1. **Acuerdo de Gravamen Mobiliario ("Security Agreement" sobre bienes muebles):**   En la Industria Lechera de Puerto Rico a nombre de Las Martas, Inc., está registrada la licencia número 3064 que opera en el Municipio de Hatillo, la cual posee la cantidad de 58,700 cuartillos de cuota cada para producir leche cruda cada 14 días; el gravamen continuo e interés asegurado (security interest) a favor del Acreedor Garantizado se constituye sobre 58,700 cuartillos de la referida cuota para producir leche cruda cada 14 días; en virtud de Acuerdo de Gravamen Mobiliario  otorgado en Hatillo, Puerto Rico el día 12 de enero de 2005, mediante testimonio número 28,485 ante el notario público Francisco J. Arraiza Donate.

2. **Acuerdo de Gravamen Mobiliario ("Security Agreement" sobre bienes muebles):** Sobre las cuentas por cobrar con la planta elaboradora Suiza Dairy, Corp., adquiridas actualmente o a ser adquiridas posteriormente que surgen o surjan de la venta de leche cruda a la   referida planta elaboradora, un gravamen   mobiliario continuo e interés asegurado (security interest), sobre las mismas para garantizar el pago preferente de la cantidad de $7,450.00 quincenales por 118 quincenas; en virtud de Acuerdo de Gravamen Mobiliario  otorgado en Hatillo, Puerto Rico el día 12 de enero de 2005, mediante testimonio número 28,487 ante el notario público Francisco J. Arraiza Donate.

3. **Declaración de Financiamiento (UCC-1)-** Declaración de Financiamiento sobre Cuota de Leche otorgada en Hatillo, Puerto Rico el día 12 de enero de 2005 mediante testimonio número 28,486 ante el notario público Francisco J. Arraiza Donate.

4.      **Declaración de Financiamiento (UCC-1)-** Declaración de Financiamiento sobre Cesión de Cuentas por Cobrar otorgada en Hatillo, Puerto Rico el día 12 de enero de 2005 mediante testimonio número 28,489 ante el notario público Francisco J. Arraiza Donate.

5.      **Hipoteca(s) de Bien(es) Inmueble(s):**    (a) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 89 otorgada en Hatillo, Puerto Rico el día 13 de mayo de 1994 ante el Notario Público Francisco J. Arraiza Donate. La escritura fue enmendada mediante la escritura número 62 otorgada en Manatí, Puerto Rico el 10 de octubre de 1995 ante el notario William A. Power  ;  (b)

25

hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 63 otorgada en Manatí, Puerto Rico el día 10 de octubre de 1995 ante el Notario Público William A. Power; (c) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 31 otorgada en Hatillo, Puerto Rico el día 6 de marzo de 1998 ante el Notario Público Francisco J. Arraiza Donate; (d) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 59 otorgada en Hatillo, Puerto Rico el día 11 de abril de 2002 ante el Notario Público Francisco J. Arraiza Donate; (e) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 23 otorgada en Hatillo, Puerto Rico el día 11 de marzo de 2003 ante el Notario Público Francisco J. Arraiza Donate; y (f) hipoteca en garantía del Pagaré Hipotecario constituida mediante la Escritura Número 158 otorgada en Arecibo, Puerto Rico el día 7 de noviembre de 2003 ante el Notario Público Francisco J. Arraiza Donate.

6.  **Pagaré Hipotecario**: significa (a) el pagaré hipotecario pagadero a la orden del Portador por la suma principal de **DOSCIENTOS CINCUENTA MIL DOLARES ($250,000.00)** con interés a uno por ciento (1%) sobre la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York para préstamos comerciales a corto plazo ("New York Prime Rate") y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ bajo el Affidávit Número 16,117 del Notario Público Francisco J. Arraiza Donate, significa (b) el pagaré hipotecario pagadero a la orden del Banco Central Hispano de Puerto Rico, según endosado a favor del Banco Popular de Puerto Rico o a su orden, por la suma principal de **CIENTO SETENTA Y CUATRO MIL CUATROCIENTOS DOLARES ($174,400.00)** con intereses sobre el balance insoluto a razón del 10 1/8% anual y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 8,368 del Notario Público William A. Power, significa (c) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de **CIENTO VEINTICINCO MIL SEISCIENTOS DOLARES ($125,600.00)** con interés a la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 21,060 del Notario Público Francisco J. Arraiza Donate, significa (d) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de **CIENTO SESENTA Y CINCO MIL DOLARES ($165,000.00)** con intereses a la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 26,004 del Notario Público Francisco J. Arraiza Donate (e) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de **CIENTO OCHENTA MIL QUINIENTOS DOLARES ($180,500.00)** con interés a la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA

26

MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 26,850 del Notario Público Francisco J. Arraiza Donate y significa (f) el pagaré hipotecario pagadero a la orden del Banco por la suma principal de **OCHENTA MIL DOLARES ($80,000.00)** con interés a dos por ciento (2%) sobre la tasa de interés preferencial ("prime rate") fluctuante y vencedero a la presentación suscrito por el Garantizador Solidario DON JUAN MANUEL BARRETO GINORIO y DOÑA MARIA ELENA HERNANDEZ RUIZ, bajo el Affidávit Número 27,441 del Notario Público Francisco J. Arraiza Donate.

7.    **Acuerdo de Gravamen Mobiliario y Contrato de Prenda :** Acuerdo de Gravamen Mobiliario y Documento de Prenda mediante los cuales el Deudor y el Garantizador Solidario · pignoran, ceden, entregan y traspasan al Banco los Pagarés Hipotecarios por la suma de $250,000.00, $174,400.00, $125,600.00, $165,000.00, $180,500.00 y $80,000.00.

8.    **Garantía Ilimitada y Contínua:**   otorgada por don Juan Manuel Barreto Ginorio y doña María Elena Hernández Ruiz, en  igual fecha del presente otorgamiento para garantizar solidariamente el  préstamo otorgado.