## ACUERDO DE GRAVAMEN MOBILIARIO

### I. LAS PARTES

ESTE ACUERDO, hecho el día 12 de enero de 2005, por las siguientes PARTES:----------------------

DE UNA PARTE: **LAS MARTAS, INC.**, corporación creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con seguro social patronal número ███████ representada por su Presidente **DON JUAN MANUEL BARRETO GINORIO**, seguro social ███████ mayor de edad, casado con María Elena Hernández Ruiz, agricultor y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se hará constar mediante Certificación de Resolución debidamente firmada por el Secretario de la Corporación en igual fecha del presente otorgamiento mediante testimonio de autenticidad número 28,482 ante el notario público Francisco J. Arraiza Donate (de ahora en adelante conocido como el DEUDOR), cuya dirección actual es la siguiente: HC 05 Box 91635, Arecibo, Puerto Rico 00612.---------------------------------------------

DE OTRA PARTE: **EL BANCO POPULAR DE PUERTO RICO**, corporación bancaria doméstica con seguro social patronal número ████████████ ███████ con oficina principal en Hato Rey, Puerto Rico, organizada y existente de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por su Oficial **DON JOSÉ ALBERTO PÉREZ LÓPEZ**, seguro social ███████ mayor de edad, casado con Julia Ivette Batista González, banquero y vecino de Arecibo, Puerto Rico, cuyo carácter representativo se acredita mediante Certificación de Resolución de la Junta de Directores del Banco Popular de Puerto Rico en sesión ordinaria celebrada el día quince (15) de julio de dos mil cuatro (2004) jurada y suscrita por Brunilda Santos de Alvarez, Secretaria Auxiliar de la Junta de Directores del Banco Popular de Puerto Rico, mediante affidavit número 4080 en San Juan, Puerto Rico el día quince (15) de julio de dos mil cuatro (2004) ante la notario público Paulette Lavergne Cuyar, cuyo Certificado de Resolución Yo, el Notario doy fe de haberlo tenido ante mí (de ahora en adelante conocido como el ACREEDOR GARANTIZADO), cuya dirección actual es la siguiente: BANCO POPULAR DE PUERTO RICO, SUCURSAL DE HATILLO, CARRETERA #2, KILOMETRO 86.6 BARRIO PUEBLO, HATILLO, PUERTO RICO 00659.----------------------

Encontrándose los comparecientes en el libre disfrute de sus derechos civiles, mediante el presente otorgamiento libre y voluntariamente exponen:------------------------------------------

### II EXPOSICIÓN

Que el Acreedor Garantizado ha concedido al Deudor un préstamo por la cantidad de UN

OFICINA REGLAMENTACION
INDUSTRIA LECHERA
05 JAN 21 AM 10: 53

MILLON OCHOCIENTOS CINCUENTA MIL DOLARES ($1,850,000.00), devengando intereses a uno por ciento (1%) por debajo de la tasa de interés preferencial ("prime rate") fluctuante prevaleciente de tiempo en tiempo en los principales bancos comerciales de la ciudad de New York, para préstamos comerciales a corto plazo ("New York Prime Rate"); bajo las cláusulas y condiciones que constan en un contrato de préstamo reconocido y suscrito por el Deudor y Acreedor Garantizado, en igual fecha del presente otorgamiento, testimonio de autenticidad número 28,491, cuyo préstamo ha sido concedido para consolidar deudas con el Banco Popular de Puerto Rico, compra de 5,000 cuartillos de cuota de leche, compra de 36 novillas, para capital de trabajo permanente y para gastos inherentes en la transacción. Es la intención del Deudor dar, conceder y otorgar al Acreedor Garantizado y el Acreedor Garantizado desea definir, sus intereses asegurados (security interests) y obtener gravamen mobiliario sobre garantía y colateral, así como sobre colateral adicional, para el préstamo antes mencionado y para cualquier aumento, prórroga, extensión, novación o renovación del mismo y cualesquiera otros préstamos, créditos, deudas, financiamientos y obligaciones vigentes, presentes y en lo sucesivo futuras del Deudor con relación al Acreedor Garantizado de cualquier naturaleza, directa, indirecta, absoluta, contingente, o comprendiendo la misma clase de deuda de la obligación original mencionada o de cualquier otra clase, o clases de obligaciones, al igual que el pago de cualquier y toda suma adeudadas, ahora y en adelante, adeudadas al Acreedor Garantizado por el Deudor, estén o no evidenciadas por cualquier pagaré u otro instrumento ya sean o no para el pago de dinero, directo, indirecto, absoluto o contingente, adeudado o a ser adeudado por el Deudor, existiendo actualmente, o de ahora en adelante, al igual que todas las obligaciones, cualesquiera otros acuerdos y/o contratos, préstamos y financiamientos con el Acreedor Garantizado, ahora y en el futuro. El Deudor y el Acreedor Garantizado entienden y acuerdan que los términos y disposiciones aquí expuestas habrán de reconfirmar, al igual que aumentar, suplementar y expandir los derechos, los intereses asegurados (security interests) del Acreedor Garantizado, al igual que sus privilegios y remedios, según aparecen dispuestos en este acuerdo de gravamen mobiliario otorgado por el Deudor y el Acreedor Garantizado.----------------------------------------------------------------------------------------------------

## III OBLIGACIONES ASEGURADAS

El Deudor y el Acreedor Garantizado en este otorgamiento teniendo la intención de estar legal y mutuamente comprometidos por medio del mismo, acuerdan, que los intereses asegurados

(security interests) y gravamen mobiliario son los otorgados en la colateral descrita más adelante para asegurar y garantizar el desempeño y cumplimiento por el deudor del préstamo antes mencionado y de las obligaciones, deudas, créditos, otros préstamos y financiamientos y los pagos según han sido extensamente relacionadas anteriormente, en el inciso II de EXPOSICIÓN con el Acreedor Garantizado, ahora y en el futuro.-------------------------------------------------------------------

IV COLATERAL

Por medio de este Acuerdo el Deudor DA, CONCEDE Y OTORGA al Acreedor Garantizado un gravamen mobiliario continuo y un interés asegurado (security interest) sobre el intangible general ("general intangible") que se describe a continuación (conocida por las partes como la "COLATERAL"):-------------------------------------------------------------------

1) En la Industria Lechera de Puerto Rico el Deudor tiene la licencia número 3064 para operar en el Municipio de Hatillo, la cantidad de 58,700 cuartillos de cuota para producir leche cruda cada 14 días.  El gravamen continuo e interés asegurado (security interest) a favor del Acreedor Garantizado se constituye sobre 58,700 cuartillos de la referida cuota para producir leche cruda cada 14 días.  El gravamen asegurado que mediante el presente otorgamiento se constituye ostenta una prioridad de rango preferente y/o primer rango a favor del Banco Popular de Puerto Rico.  La totalidad de la cuota gravada garantiza la cantidad de UN MILLON SESENTA MIL DOSCIENTOS DOLARES ($1,060,200.00) del préstamo mencionado por UN MILLON OCHOCIENTOS CINCUENTA MIL DOLARES ($1,850,000.00) y tasándose la cuota a DIECIOCHO DOLARES CON SIETE CENTAVOS ($18.07) por cada cuartillo.-----------------------------------------------------

GARANTIAS, CONVENIOS Y ASEVERACIONES

Por medio de este Acuerdo, el Deudor asevera, garantiza y acuerda lo siguiente:------------------

1. Las aseveraciones contenidas en la (s) solicitud (es) del préstamo (s) y/o financiamientos del Deudor son ciertas y correctas y que el producto del préstamo o préstamos, financiamientos, obligaciones, créditos asegurados por medio de este Acuerdo, según han sido extensamente relacionados (véase EXPOSICIÓN) habrá de utilizarse exclusivamente para los propósitos que aparecen aseverados y expuestos en tal (es) solicitud (es) y en la eventualidad de que cualesquiera de la Colateral sea comprada con el producto de cualquier préstamo o adelanto asegurado en este Acuerdo, el Deudor, conforme, autoriza al Acreedor Garantizado, a opción suya, a pagar el precio de venta al vendedor de tal Colateral, y-----------------------------------------------------------

3

2. El Deudor es dueño y/o tiene interés y/o derecho sobre la Colateral descrita aquí la cual manifiesta está libre y expedita de gravámenes e intereses y de garantías anteriores, EXCEPTO con relación a lo siguiente: NINGUNO--------------------------------------------------------------------

3. El Deudor deberá pagar, cuando estén vencidas y/o sea exigible su pago, todas las deudas aseguradas por medio de este acuerdo según mencionadas en la Sección II de EXPOSICIÓN con sus respectivos intereses, conjuntamente con cualquier renta, impuestos, incautaciones, productos u otras reclamaciones que son o puedan convertirse en gravámenes respecto a dicha Colateral.--------

4. El Deudor deberá de cuidar y mantener la Colateral como bien lo haría un buen padre de familia y no podrá gravar, cancelar, remover, vender adicionalmente o de otra forma disponer de la misma sin el consentimiento escrito del Acreedor Garantizado y al serle requerido, deberá de proveer Colateral adicional que sea aceptable al Acreedor Garantizado.---------------------------------

5. El Deudor deberá asegurar la Colateral por tales cantidades y en tal forma, según sea requerido por el Acreedor Garantizado, y habrá de pagar las primas, conforme.-------------------------

6. El Deudor deberá realizar aquellos actos, obtener, formalizar y entregar aquellas cosas, documentos, escrituras, seguros e instrumentos adicionales, según el Acreedor Garantizado le requiera de tiempo en tiempo para investir y asegurar al Acreedor Garantizado de sus derechos bajo este Acuerdo y/o Colateral ofrecida y los productos de ésta, incluyendo pero no limitado, a renuncias de arrendadores y acreedores hipotecarios.-----------------------------------------------------------

7. El Deudor deberá jurar y suscribir ante notario la Declaración de Financiamiento correspondiente, y cualquier otro documento requerido por el Acreedor Garantizado para perfeccionar el interés asegurado (security interest) otorgado y mediante el presente Acuerdo.---------

8. El Deudor deberá someter y notificar, en forma satisfactoria para el Acreedor Garantizado, la información que el Acreedor Garantizado pueda requerir con relación a la Colateral. La Colateral, al igual que los libros y registros del Deudor, habrán de guardarse en los predios del Deudor (si tal fuera el caso), y el Deudor habrá de notificar al Acreedor Garantizado de forma oportuna acerca de cualquier cambio en la localización de la Colateral y el Deudor no habrá de remover la Colateral de dicha localización (excepto con relación a vehículos de motor y para inventario vendido en el curso ordinario de negocios), sin el consentimiento escrito del Acreedor Garantizado. El Deudor habrá de notificar al Acreedor Garantizado inmediatamente, por escrito, acerca de cualquier adición, cambio, o descontinuación de su lugar de negocios.-------------------------------------------------------

4

9. El Deudor deberá, en todo momento durante las horas normales del negocio, darle al Acreedor Garantizado o sus agentes, acceso completo y el derecho de auditar, chequear, inspeccionar y hacer sumarios y copias de los libros, registros, auditorías, correspondencia y todos los otros papeles del Deudor relacionados a la Colateral. El Acreedor Garantizado o sus agentes podrán entrar en los predios del Deudor a cualquier hora razonable durante horas laborables y de tiempo en tiempo con el propósito de inspeccionar la Colateral y cualesquiera registros relacionados a esta, lo cual también podrá realizar en la Industria Lechera de Puerto Rico (si tal fuera el caso).------

10. El Deudor deberá, a solicitud del Acreedor Garantizado, y sin notificación al Deudor, el Acreedor Garantizado mismo, podrá a nombre del Acreedor Garantizado o del Deudor, en cualquier momento (sin importar si el Deudor se encuentra o no en incumplimiento por la presente), notificar a deudores de cuentas y de contratos y otros obligados en el gravamen mobiliario y el interés asegurado (security interest) del Acreedor Garantizado, a los fines de ordenar, implementar y administrar los pagos a ser pagados al Acreedor Garantizado; el Acreedor Garantizado podrá exigir, demandar para cobrar o recibir cualquier dinero o propiedad pagadera o por cobrar en cualesquiera cuentas, derechos de contrato e intangibles generales, y transar, liberar, comprometer, ajustar, demandar con relación a, ejecutar, llevar a cabo o de otra manera hacer cumplir, valer o ejecutar cualquier cuenta, derecho de contrato o derechos intangibles generales según determine el Acreedor Garantizado (sin importar si el Deudor está o no en incumplimiento por la presente), y para los propósitos de poner en práctica los derechos de Acreedor Garantizado según este documento de Acuerdo de Gravamen, el Acreedor Garantizado podrá recibir cualquier correspondencia abierta dirigida al Deudor y retener y endosar pagarés, cheques, letras de cambio, giros, documentos de título u otras formas de pago a nombre de y a favor del Deudor.-------------------------------------

11. El Deudor deberá notificar al Acreedor Garantizado inmediatamente acerca de cualquier evento que cause una pérdida material o merma en el valor de la Colateral y la cantidad de tal pérdida o depreciación.-------

12. El Deudor mantendrá, renovará y conservará en vigencia todos los derechos, poderes, licencias, privilegios y franquicias que en la actualidad posea y no podrá ceder ni traspasar los mismos sin el consentimiento del acreedor garantizado.-------

13. Se conviene expresamente que el Acreedor Garantizado podrá cargar o debitar, a cualquier cuenta de depósito que el Deudor tuviera con el Acreedor Garantizado, aquella cantidad

OFICINA REGLAMENTACIÓN
INDUSTRIA LECHERA
05 JAN 21 AM 10: 53

5

que fuera necesaria para satisfacer los intereses devengados, plazos de principal o notas vencidas de los préstamos, deudas vigentes, presentes o futuras, según han sido mencionadas extensamente en la Sección II de EXPOSICIÓN de este Acuerdo, o cualquier otra deuda, que no fueran pagados al Acreedor Garantizado dentro de un término de diez (10) días de la fecha en que los mismos sean pagaderos y exigibles.------------------------------------------------------------------------------------------

14. Como condición previa a cualquier desembolso bajo el presente Acuerdo, el Deudor someterá al Acreedor Garantizado un Estado Financiero cubriendo el último año fiscal del Deudor.

15. El Deudor pagará puntualmente el principal y los intereses devengados de acuerdo con los términos pactados.------------------------------------------------------------------------------------------

16. El Deudor pagará oportunamente todas las contribuciones, patentes, arbitrios y derramas que el Gobierno de Puerto Rico le imponga sobre sus propiedades e ingresos; disponiéndose, que el Deudor podrá cuestionar la validez de cualquier contribución, arbitrio o derrama o su cuantía, pudiendo litigar de buena fe su responsabilidad, siempre que establezca las correspondientes y adecuadas reservas para el incumplimiento de este acuerdo.-----------------------------------------------

## VI CAUSAS DE INCUMPLIMIENTO

Al ocurrir cualesquiera de los eventos descritos de aquí en adelante, el Deudor estará en incumplimiento:-------------------------------------------------------------------------------------------------

1. Cualquier falta del Deudor en observar o ejecutar alguna condición, acuerdo o compromiso bajo este Acuerdo de Gravamen, o cualquier violación por parte del Deudor de cualquier garantía, representación y/o aseveración en este Acuerdo de Gravamen, o--------------------

2. Si el Deudor comete una violación o incumplimiento bajo cualquier pagaré, acuerdo, cesión, préstamo (s), línea de crédito, acuerdo de gravamen, hipoteca, escritura o fideicomiso o acuerdo relacionado o documento entre las partes a estos fines, haya sido previamente otorgado o a ser otorgado en el futuro, o-------------------------------------------------------------------------------

3. Si hay alguna pérdida material, deterioro o reducción en el valor de la Colateral que no esté cubierto por el seguro (si tal fuera el caso), o--------------------------------------------------------

4. Si el Deudor incumple un acuerdo o compromiso con algún acreedor del Deudor, si el efecto de tal incumplimiento es permitirle al tenedor de tal obligación o a cualquier representante del tenedor, que la o cualquier obligación sea declarada vencida antes de su fecha de vencimiento o antes de sus fechas regularmente programadas para pago o el permitirle a un síndico o tenedor de

6

cualquier deuda elegir una mayoría en la Junta de Directores del Deudor (si tal fuera el caso), o-------

5. Si el Deudor falla en hacer cualquier pago de principal o interés al Acreedor Garantizado con relación a cualquier pagaré, préstamo, financiamiento, línea de crédito, vigente, presente o futura según extensamente relacionado en el inciso II de EXPOSICIÓN o bajo cualquier acuerdo en o antes de la fecha en que tal pago venza; o si el pagaré es un instrumento a la demanda, no haga el pago en su totalidad cuando se haga el requerimiento, o----------------------------------------

6. Si el Deudor falla en pagar cualesquiera otros pagos del Acreedor Garantizado dentro de cinco (5) días luego de haber sido facturado o requerido por el Acreedor Garantizado, o----------------

7. Al solicitar el nombramiento de un síndico provisional, liquidador, custodio, síndico u oficial similar o fiduciario similar para el Deudor o la propiedad del Deudor, pero si dicha solicitud se hace en contra del Deudor, entonces el incumplimiento bajo esta cláusula no habrá de ocurrir si dicha solicitud es desestimada dentro de los treinta (30) días de haber sido emitida, o--------------------

8. Al emitirse cualquier proceso de liquidación, embargo o trabar ejecución en contra del Deudor o su propiedad, que no sea removido, desestimado o satisfecho en o antes de treinta (30) días de haberse promovido, o--------------------------------------------

9. Si cualquier sentencia final para el pago de dinero es emitida por una corte de récord contra el Deudor y el Deudor no paga la misma dentro de treinta (30) días desde la fecha de su notificación, o--------------------------------------

10. Si el Deudor se torna insolvente, hace una cesión para el beneficio de los acreedores, u ofrece un ajuste o extensión a los acreedores, o------------------------------------------

11. Al comenzar los procedimientos de quiebra o procedimientos para disolución, liquidación o un arreglo, reorganización o reajuste de cualesquiera de las deudas del Deudor, ya sea instituida por o en contra del Deudor, pero si tales procedimientos son instituidos en contra del Deudor entonces el incumplimiento no habrá de ocurrir si dichos procedimientos son revocados o desestimados dentro de los treinta (30) días luego de tal comienzo.------------------------------

VII DERECHOS Y REMEDIOS PARA INCUMPLIMIENTO

Al ocurrir cualesquiera de los anteriores eventos de incumplimiento, el Acreedor Garantizado habrá de tener la opción de declarar todas las deudas u obligaciones del Deudor bajo este Acuerdo de Gravamen según mencionadas extensamente en la Sección II de EXPOSICIÓN y cualquier otro acuerdo, pagaré o compromiso de parte del Deudor, incluyendo, sin limitación alguna, todas las

7

responsabilidades bajo cualesquiera acuerdos asignados o cedidos al Acreedor Garantizado, con recurso, junto con el interés sobre éstos, a que advengan inmediatamente vencidos y pagaderos sin notificación adicional o requerimiento por parte del Acreedor Garantizado. No obstante, cualquier disposición contraria contenida en este Acuerdo, el Acreedor Garantizado se reserva el derecho de requerir el pago en su totalidad con relación a cualquier obligación del Deudor pagadera a la demanda sin la ocurrencia de cualesquiera de los anteriores eventos de incumplimiento, con lo cual en adición a todos los derechos que el Acreedor Garantizado pueda tener bajo la Ley número 241 del 19 de septiembre de 1996, según enmendada en su capítulo 9 sobre "Transacciones Garantizadas", o cualquier otra ley, el Acreedor Garantizado también tendrá los siguientes derechos y remedios.-----------------------------------------------------------------------------------------------------

1. Hasta el punto que la ley lo permita, el derecho de tomar posesión de la Colateral con o sin procedimiento judicial,-----------------------------------------------------------------------------------

2. El Acreedor Garantizado puede pacíficamente por sus propios medios o con asistencia judicial entrar en los predios del Deudor y tomar posesión de la Colateral, o dar cuenta de no ser susceptible de ser utilizada, o disponer de la Colateral en los predios del Deudor sin obligación o responsabilidad alguna por alquiler, almacenaje, utilidades u otras sumas, y el Deudor no habrá de resistir o interferir con tal acción.------------------------------------------------------------------------

3. El Acreedor Garantizado puede requerirle al Deudor que reúna todo o parte de la Colateral y ponerla a la disposición del Acreedor Garantizado en cualquier lugar a ser designado por el Acreedor Garantizado que sea razonablemente conveniente para el Deudor y para el Acreedor Garantizado.--------------------------------------------------------------------------------------------

4. Conforme este Acuerdo, el Deudor acuerda que una notificación enviada a este por lo menos cinco (5) días antes de la fecha de cualquier venta pública, o del tiempo, después del cual cualquier venta privada u otra disposición de la Colateral ha de ser realizada, habrá de considerarse notificación razonable de tales ventas u otra disposición; disponiéndose, sin embargo, que si el inventario o bienes se considerase perecedero, el Deudor acuerda que veinticuatro (24) horas de notificación previa por escrito (incluyendo correo o comunicación similar) habrá de considerarse como notificación razonable de venta o disposición de tal inventario perecedero, y-----------------------

5. Si la ley lo permite, el Acreedor Garantizado también habrá de tener derecho de solicitar y tener un síndico provisional, custodio, o fiduciario similar nombrado por la corte de jurisdicción

OFICINA REGLAMENTACIÓN INDUSTRIA LECHERA
05 JAN 21 AM 10: 53

8

competente para poder administrar, proteger y mantener la Colateral y continuar la operación del

negocio del Deudor y para cobrar todos los ingresos y las ganancias de estos y aplicar los mismos

al pago de todos los gastos y otros cargos de tal sindicatura, incluyendo la compensación del síndico

provisional, y al pago de las responsabilidades del Deudor y las deudas aseguradas por este

Acuerdo.-----------------------------------------------------------------------------------------------------

6. Si el Deudor incumple o deja de llevar a cabo cualquier acuerdo, garantía o compromiso

dentro de este Acuerdo de Gravamen, el Acreedor Garantizado puede, a opción suya, hacer pagos

o incurrir en gastos para aliviar el efecto del incumplimiento o restaurar el cumplimiento,

disponiéndose, sin embargo, que el Acreedor Garantizado no habrá de estar bajo obligación alguna

de hacer tal cosa, y en adición, disponiéndose, que cualquier acción tal por parte del Acreedor

Garantizado no habrá de constituir un relevo al incumplimiento del Deudor. Cualquier pago hecho

o gasto incurrido por el Acreedor Garantizado en aliviar el efecto de cualquier incumplimiento o

restaurar el cumplimiento, incluyendo gastos y honorarios de abogado, habrá de ser obligación

asegurada por la Colateral y habrá de constituir parte de las obligaciones y responsabilidades de este

Acuerdo, del Deudor al Acreedor Garantizado, conjuntamente con sus intereses a la tasa de interés

más alta establecida en cualquier acuerdo o los pagarés del Deudor al Acreedor Garantizado.----------

7. El Deudor deberá, si no fuese prohibido por la ley aplicable, reembolsar al Acreedor

Garantizado por todas las costas, gastos, cargos y honorarios de abogado en los que incurra el

Acreedor Garantizado para poner en efecto las disposiciones de este Acuerdo de Gravamen o cobrar

cualquier responsabilidad vigente, presente o futura adeudada por el Deudor al Acreedor

Garantizado conjuntamente con los intereses a la tasa de interés más alta establecida en cualquier

acuerdo o pagaré del Deudor al Acreedor Garantizado.-----------------------------------------------------

VIII. DISPOSICIONES MISCELANEAS

1. La renuncia del Acreedor Garantizado de cualquier garantía y/o compromisos contenidos

aquí, o de cualquier violación a éstos, o la omisión del Acreedor Garantizado en cualquier momento

en particular de ejercer un derecho, remedio, privilegio, u opción aquí contenida no habrá de

interpretarse como o constituir una renuncia de tal, o cualquier garantía, gravámen mobiliario,

compromiso, derecho, privilegio, remedio, u opción en el futuro, o de cualquier violación

subsiguiente, y no habrá de ninguna manera afectar o perjudicar en forma alguna los derechos del

Acreedor Garantizado o sus intereses o gravámenes según se disponen aquí, o la responsabilidad y

9

obligaciones garantizadas del Deudor bajo este Acuerdo de Gravamen. Ningún atraso u omisión del Acreedor Garantizado en ejercitar cualquier derecho habrá de operar como una renuncia de tal derecho o de algún otro derecho. Todos los derechos y remedios del Acreedor Garantizado, ya sean evidenciados por medio de este Acuerdo de Gravamen o por cualquier otro acuerdo o contrato, instrumento o instrumento de crédito, habrán de ser acumulativos y podrán ser ejercidos sencillamente o concurrentemente. El Acreedor Garantizado puede proceder en contra de toda o cualquier parte de la Colateral, o cualquiera otra Colateral, en cualquier orden.----------------------------

2. Al Acreedor Garantizado no se le habrá de requerir que supla alguna fianza o provea alguna caución o garantía antes de hacer valer cualquier derecho, reclamación, posesión, dominio o control sobre, en o a la Colateral.-----------------------------------------------------------

3. Todos los convenios, acuerdos, representaciones y garantías hechas aquí habrán de considerarse como materiales y de confiabilidad para el Acreedor Garantizado, y habrán de subsistir en el cumplimiento y entrega de este Acuerdo de Garantía.---------------------------------------------

4. El Acreedor Garantizado tendrá la facultad de ceder el presente Acuerdo de Gravamen Mobiliario, según lo estime conveniente. Conforme a lo antes expuesto, todos los derechos del Acreedor Garantizado bajo este Acuerdo de Gravamen Mobiliario habrán de tener efecto para el beneficio de sus sucesores y cesionarios, y todas las obligaciones de el (los) Deudor (es) habrán de comprometer a los sucesores del Deudor y sus cesionarios.--------------------------------------------

5. Es la intención del las partes que este Acuerdo de Gravamen asegure deudas vigentes existentes y futuras según relacionadas extensamente en la Sección II de EXPOSICIÓN en este Acuerdo, y, no obstante la (las) cantidad (es) aseguradas y/o garantizadas en cualquier momento sean reducidas a cero, este acuerdo habrá de permanecer en toda su fuerza y vigor continuamente hasta que una (s) Declaración de Terminación debidamente cumplimentada sea radicada terminando así el gravamen mobiliario y el interés asegurado (security interest) del Acreedor Garantizado en la Colateral descrita en este Acuerdo.-------------------------------------------------------------

6. Si más de un deudor firma este Acuerdo, o si un subsidiario o garantizador solidario del Deudor se une a este Acuerdo y se convierte en Deudor bajo este Acuerdo, la responsabilidad de todos los deudores habrá de ser solidaria, y el término Deudor según es usado aquí habrá de significar todos los deudores, colectivamente y solidariamente, y está expresamente entendido y acordado que el Acreedor Garantizado ante un incumplimiento bajo este Acuerdo, podrá, a opción

10

suya, proceder en contra de cualquier deudor o cualquiera de los deudores mencionados aquí sin

afectar y menoscabar el derecho del Acreedor Garantizado de proceder en contra de todos los

deudores, mencionados aquí, colectivamente. El derecho del Acreedor Garantizado en contra de uno

o más Deudores no habrá, en forma alguna, de operar para liberar o afectar las responsabilidades,

los convenios, las garantías, representaciones y compromisos de cualquier otro deudor mencionado

en este Acuerdo.------------------------------------------------------------------------------------------------------

      7. Todas las partes en este Acuerdo de Gravamen, incluyendo garantizadores, fiadores

garantizados, endosantes, codeudores, consienten y acuerdan sin notificación adicional a ninguno

de ellos, y sin afectar la responsabilidad y obligaciones de cualquiera de ellos, que: (1) el

incumplimiento de cualquier obligación de cualquier parte puede ser extendida, o acelerada por el

Acreedor Garantizado; (2) cualquier acuerdo de crédito puede ser renovado, extendido o

reamortizado total o parcialmente; (3) cualquier colateral puede ser sustituida, entregada, liberada

o manejada de la manera que determine a su criterio el Acreedor Garantizado; (4) cualquier parte

puede ser liberada totalmente o parcialmente de su obligación y/o responsabilidad y (5) cualquier

defensa que pueda estar disponible si el Acreedor Garantizado omite perfeccionar un interés de

garantía en una propiedad o bien mobiliario de conformidad con las leyes aplicables, son

renunciadas. Los Deudores renuncian solidariamente al aviso, presentación, protesta y notificación

de protesta y renuncian al beneficio de todas las leyes de exención existentes actualmente o

legisladas posteriormente en cuanto a cualquier pagaré, inversiones, cesiones, préstamos

financiamientos, líneas de crédito e instrumento asegurado en este Acuerdo, en fin, según han sido

relacionadas extensamente en la Sección II de EXPOSICIÓN en este Acuerdo y en cualquier evento

sobre la propiedad descrita aquí, y en adición renuncian a cualesquiera y toda defensa, derecho de

compensación, reclamación o derecho de subrogación que ellos o cualquiera de ellos pueda o

pudieran tener en contra del Acreedor Garantizado, sus sucesores o cesionarios y por medio de este

Acuerdo de Gravamen renuncian a cualquier defensa que ellos o cualquiera de ellos pueda o

pudieran tener en relación al intercambio, venta, entrega u otro manejo o disposición de cualquier

Colateral.----------------------------------------------------------------------------------------------------------

      8. Este Acuerdo de Gravamen Mobiliario habrá de ser considerado como un Acuerdo

continuo, y todos los derechos, poderes y remedios en el mismo aplicarán a todas las deudas,

vigentes, presentes y futuras según mencionadas específicamente en la Sección II de este Acuerdo

OFICINA REGLAMENTACION
INDUSTRIA LECHERA
05 JAN 21 AM 10: 53

11

(EXPOSICIÓN) que tenga el Deudor con el Acreedor Garantizado a pesar del deceso, disolución, incapacidad o insolvencia del deudor, por lo que continuará en toda su fuerza y vigor hasta que todas las deudas hayan sido pagadas en su totalidad.---------------------------------------------------------

    EN TESTIMONIO DE LO CUAL: Este Acuerdo de Garantía es otorgado en Hatillo, Puerto Rico, a 12 de enero de 2005.

LAS MARTAS, INC.            BANCO POPULAR DE PUERTO RICO

TESTIMONIO NÚMERO: 28,485

    Reconocido y suscrito ante mí por DON JUAN MANUEL BARRETO GINORIO, en su carácter de Presidente de LAS MARTAS, INC. y por DON JOSE ALBERTO PEREZ LOPEZ, en su carácter de Oficial del Banco Popular de Puerto Rico; de las circunstancias personales antes expresadas; a quienes doy fe de conocer personalmente.

    En Hatillo, Puerto Rico, a 12 de enero de 2005.

NOTARIO PÚBLICO

OFICINA REGLAMENTACION INDUSTRIA LECHERA
05 JAN 21 AM 10: 53

12