IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| IN RE | BANKRUPTCY 18-07304 ESL |
|---|---|
| VAQUERIA LAS MARTAS INC.<br>EIN #66 0541863 | CHAPTER 12 |
| Debtor-In-Possession | |

DEBTOR's RESPONSE TO CONDADO 5's MOTION TO PROHIBIT
USE OF CASH COLLATERAL at doc #17

TO THE HONORABLE COURT:

COMES NOW debtor through new counsel on behalf of debtor and respectfully pleads as follows:

1. Debtor ADMITS ¶1 of the motion.

2. Debtor DENIES §2 of the motion, although debtor accepts that a valid Security Agreement and a UCC were executed by the parties on January 12, 2005. The UCC Statement attached as Exhibit # 4 [in the Spanish language] appears to have expired since 2015.

3. Debtor ADMITS ¶3 of the motion.

4. Debtor ADMITS ¶4 of the motion.

5. Debtor ADMITS ¶5 of the motion, but clarifies that this creditor is receiving 100% of the dairy farm's milk production.

6. Debtor DENIES §6 of the motion.

7. Paragraph 7 is a citation of a provision in the law which does not require a response.

8. Paragraph 8 is a citation of a provision in the law which does not require a response, but debtor denies any need to consent by Condado5 for the debtor to use the cash collateral, since secured creditor, Condado5 is receiving 100% of the milk production. As after acquired property these funds or revenues are not subject to the valid pre-petition lien. In the alternative, to the extent that the property in that of the Milk Quota is determined to be cash collateral, court authorization is needed for use of the same.

9. Debtor DENIES §9 of the motion, in the context of milk production.

10. Debtor DENIES §10 of the motion, as it appears that the UCC Financing Statement attached as Exhibit #4 has expired since 2015.

11. Debtor DENIES §11 of the motion as to its applicability to new milk production post-petition.

12. Debtor ADMITS §12 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code, yet denies its applicability to the facts of this case.

13. Debtor ADMITS §13 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code and/or interpretation in the case law cited, yet denies its applicability in the facts of this case.

14. Debtor ADMITS §14 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code, yet denies its applicability in the facts of this case.

15. Debtor ADMITS §15 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code, and/or interpretation in the case law cited, yet denies its applicability in the facts of this case.

16. Debtor ADMITS §16 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code, and/or interpretation in the case law cited, yet denies its applicability in the facts of this case.

17. Debtor ADMITS §17 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code, and/or interpretation in the case law cited, yet denies its applicability in the facts of this case.

18. Debtor ADMITS §18 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code, and/or interpretation in the case law cited, yet denies its applicability in the facts of this case. Furthermore, milk quotas or milk production are not "rents".

19. Debtor ADMITS §19 of the motion, as it is a citation and/or correct interpretation of the cited disposition and provision of the Code, and/or interpretation in the case law cited, yet DENIES its applicability to the facts of this case. Furthermore, milk quotas or milk production are not "rents".

20. Debtor DENIES §20 of the motion.

21. Debtor ADMITS §21 of the motion, yet denies that any prohibition as such is appropriate since debtor has not used, nor is there evidence argued, presented or attached that debtor is using the cash from its milk production. Condado5 receives 100% of the production.

22. Debtor DENIES §22 of the motion. Condado5 receives 100% of the production.

## AFFIRMATIVE DEFENSES

### Condado 5 is Receiving 100% of Milk Production from Suiza Diary on behalf of Debtor

23. Condado5 is using 100% of the current milk production from the debtor's post-petition operation of its dairy farm and its post-petition milk production. There are no other assignments of debtor's milk production other than to Condado5.

24. There is no evidence argued, shown or attached to Condado5's motion showing anything to the contrary other than receipt by Movant of 100% of the milk production and/or assignment of debtor's milk production to another entity, other than Condado5.

### UCC Financing Statement may have expired [§9-515 Chapter 9 Secured Transactions Law 21 January 17, 2012]

25. The UCC Financing Statements #2005005313 & #2005006312 attached as Exhibit #4 are dated January 12, 2005 and appear to have lapsed. A search of the Department of State's on line UCC Registry shows no current, or new or renewed UCC Financing Statement at this time in benefit of Condado5 or the prior holder of the secured interest, BPPR.

26. Debtor cannot waive a future defense or right before an act of non-compliance by the secured creditor of requirements of renewal of the UCC Financing Statement notwithstanding any provision in the Security Agreement of an anticipated waiver of such omission or prescription.

## ARGUMENT

### Post-Petition Receipts or After-Acquired Property Is Not Cash Collateral

27. While Condado5 may have had a validly perfected pre-petition security interest in all of the debtor's assets and transactions under state law, this security interest does not attach to post-petition revenues or milk production and are not subject to the Bank's lien:

*Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.*

11 U.S.C. §522(a).

None of the sections of §552(b) apply.

28. Debtor receives payment to produce milk on simultaneous milk production; it has no receivables or other pre-petition entitlements. The very nature of this property is that it is not created until received, or until the cows are milked on the same day as taken to market.

29. As such, all Milk Quota transactions are post-petition property; they depend upon the work of employees in milking the cows to send to market in that of VTM and the expenditure of producing the post-petition milk to allow for payment of the Milk Quota.

30. The Ninth Circuit Bankruptcy Appellate Panel has already considered this question:

> As a general rule, post-petition revenue is not cash collateral. Under § 552(a), a creditor's prepetition security interest does not extend to property acquired by the debtor post-petition even if there is an "after acquired" clause in the security agreement.[3] 11 U.S.C. § 552(a). The purpose of § 552(a) is "to allow a debtor to gather into the estate as much money as possible to satisfy the claims of all creditors." *Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.),* 944 F.2d 500, 502 (9th Cir. 1991); *Financial Sec. Assurance v. Days Cal. Riverside Ltd. P'ship. (In re Days Cal. Riverside Ltd. P'ship),* 27 F. 3d 374, 375 (9th Circ. 1994); *Arkinson v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.),* 316 B.R. 330, 335 (9th Cir. BAP 2004).
>
> *In re Premier Golf Properties, LP,* 477 BR 767 at 762 (9th Cir. BAP, 2012)

31. The court further analyzed this in light of its prior *Zeeway* opinion:

> In 1987, the Ninth Circuit Bankruptcy Appellate Panel (BAP) articulated a general test for determining whether income from real property constitutes rents:
>
> If the income is produced by the real property, it is considered rents; but if the income is the result of services rendered or the result of the specific business conducted on the property, then it does not constitute rents. *In re Zeeway Corp.,* 71 B.R. 210 at 211-12.
>
> In applying its test, the BAP concluded that gate receipts generated by post-petition races at the debtor's racetrack were not within the scope of rents subject to the creditor's deed of trust because the income was not produced by the occupancy or use of the real property, but by the services that the raceway provided.[6] *Id.*
>
> Courts have applied the *Zeeway* test in deciding if a debtor's income from its business operations is rent within § 552(b). Prior to 1994, "rents" was included in the § 552(b)(1) exception and there was a long-running dispute in the courts about whether hotel revenues were rents. *See, e.g., In re S.F. Drake Hotel Assocs.,* 131 B.R. 156, 159-60 (Bankr.N.D.Cal.1991) *aff'd,* 147 B.R. 538 (N.D.Cal.1992); *Greyhound Real Estate Fin. Co. v. Official Unsecured Creditors' Comm. (In re Northview Corp.),* 130 B.R. 543, 548 (9th Cir. BAP 1991).
>
> However, the addition of § 552(b)(2) resolved the dispute by treating hotel room revenue the same as rents. Nevertheless, courts continue to confront the question of what constitutes rents in non-hotel cases and refer to pre-1994 case law analysis regarding whether a debtor's income was produced by the real property or by the services on the property.
>
> *supra,* at 774.

32. The Debtor's business is much like a golf course or a race track in this regard: it relies on the physical facilities, but the customers are paying for the services generated by the actions of employees. Dairy farmers through their employees, care, feed, maintain and milk the cows to allow the almost daily delivery and production of Milk to the market. The production of milk and its delivery to market is similarly distinguishable from hotels, for which the usage of the

property is the primary purpose.

33. In the U.S. Supreme Court's holding in *Local Loan Co. v Hunt,* 292 U.S. 234 (1934), the Court barred "the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, preexisting property, but brought into being solely as the fruit of the subsequent labor of the bankruptcy." *Id.* At 243; see *Smoker v. Hill & Assocs.,* 204 B.R. 966 (N.D. Ind. 1997) (affirming bankruptcy court's finding debtor's post-petition insurance commissions subject to creditor's lien pursuant to §552(b)(1). Moreover, "[t]he passage of §552 broadened the scope of the *Local Loan* holding to extinguish all liens on after-acquired property, subject to certain exceptions." *In re Cafeteria Operators, L.P.,* 299 B.R. 400, 405 (Bankr. N.D. Tex 2003).

34. In the case of *In re Inman*, 95 B.R. 479 (Bankr. W.D. Ky. 1988) the court concluded that while a lender held a pre-petition security interest in a debtor's inventory, the money generated by the operation of the restaurant converting the inventory into sale of food was a service. *Id.* At 480-81. Accordingly, the court held restaurants sell services, and profits generated by converting the inventory into food fit for human consumption constituted after-acquired property, rather than proceeds of the restaurant's inventory. *Id.* At 481.

35. The secured creditor has the burden of proving that its lien survives 11 U.S.C. §552. See, e.g. *Official Comm. Of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC),* 501 B.R. 549 (Bankr. S.D.N.Y. 2013).

36. Secured creditors must establish two requirements under §552(b): 1) that the parties entered into a prepetition security agreement extending to after-acquired property, and 2) the after-acquired property must fit within the enumerated categories of proceeds, products, offspring, profits, or rents under §552(b). *T-H New Orleans Ltd. P'ship v. Financial Sec. Assurance (In re T-H New Orleans Ltd. P'ship),* 10 F. 3d 1099, 1104 (5th Cir. 1993).

37. In the alternative, that this Court find that what debtor considers "after acquired property" in that of milk production or quota, is in fact subject to Condado5's pre-petition lien, that the Court determine that debtor requires 100% of its milk production or nearly 100% to provisionally or permanently to operate and re-establish a higher milk production that will benefit both the secured creditors of this Estate and its unsecured creditors to aid the reorganization process of this debtor.

38. Debtor requests the Court to authorize the temporary or permanent use of the milk production at 100% or nearly 100% to off-set an already low production caused by the ongoing pre-petition payment of debtor's entire Milk Quota to this one creditor and allow for an increase in production through investing of the funds for the operation of the dairy farm and enable debtor's reorganization effort.

*Conclusion*

WHEREFORE, debtor respectfully requests as follows:

a) Determine that debtor has not, and is not, using the proceeds of its milk production, but

rather Condado5 is receiving 100% of the debtor's milk production;

b) Determine that the Milk Quota is not cash collateral of any party; or in alternative

c) Determine that debtor requires 100% of its milk production or nearly 100% to operate and re-establish a higher milk production;

d) That any Order to be entered be effective *nunc pro tunc* to the filing of this case.

e) Determine that Condado5 has an enforceable lien on the real property and may be entitled to adequate protection in periodic payments if it is determined that the value of the real estate continues to depreciate to adequately protect Condado5 from further diminishing value of the real estate that partially secures its claim.

CERTIFICATE OF SERVICE: I hereby certify that this *Response* has been filed electronically and notice of the same via Cm/Ecf will be given to participants therein, and especially to Ferraiuoli, LLC to scolon@ferraiuoli.com, gchico@ferraiouli.com via Cm/Ecf and to the Chapter 12 Trustee at his address of record.

DATED: February 28, 2019.

s/ *L.A. Morales*
LYSSETTE A. MORALES VIDAL
USDC PR #120011
L. A. MORALES & ASSOCIATES P.S.C.
URB VILLA BLANCA
76 AQUAMARINA
CAGUAS, PUERTO RICO 00725-1908
TEL 787-746-2434 / 258-2658
FAX 855-298-2515
Email lamoraleslawoffice@gmail.com &
irma.lamorales@gmail.com

*Counsel for Debtor*