IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>VAQUERÍA LAS MARTAS, INC.<br><br>Debtor(s) | CASE NO.: 18-07304 ESL<br><br>CHAPTER 12 |

### TRUSTEE'S OBJECTION TO CONDADO 5, LLC MOTION FOR RECONSIDERATION
(DKT. NO. 123)

TO THE HONORABLE COURT:

NOW COMES José R. Carrión, Chapter 12 Standing Trustee, and very respectfully alleges and prays:

1. On April 29, 2020 Condado 5, LLC (herein after "Condado") filed Motion for Reconsideration (Dkt No. 123). Condado seeks under Fed. R. Civ. P. 59(e), the modification of the Opinion and Order, docket 120 entered by this Court on April 15, 2020, asserting as grounds for their request that the order constitutes a manifest error of law that results in a manifest injustice.

2. For the reasons that are explained bellow, the Chapter 12 Standing Trustee objects to the same and seeks that it be denied.

3. In the Opinion and Order of April 15, 2020, this Court concluded that Condado's security agreement does not specify that the dairy cows or the raw milk produced by Debtor's dairy farm operation, serve as collateral to the loans. Hence since Condado's collateral does not include the cows, it may not claim that its security interest attaches to any identifiable proceeds of the cows. (O&O, Dkt 120, page 16, 3rd paragraph.)

4. Condado claims that the court erred because it "*does not take into account how the milk industry operates.*" In support of their assertion Condado argues (1) that a dairy farmer can sell raw milk to "anybody" for any purpose other than for the fresh milk market that is regulated by *Oficina de Reglamentación de la Industria Lechera* (herein after "ORIL"). (2) That such raw milk

Case:18-07304-ESL12 Doc#:127 Filed:05/04/20 Entered:05/04/20 22:37:12 Desc: Main
Document Page 2 of 6

TRUSTEE'S OBJECTION TO CONDADO .... (DKT 123) 2
--------------------------------------------------------------------------------------------------------

produced and sold in that manner, would not be encumbered by the lien over the farmers milk quota. They further argue that in that case, only the creditor with a lien over the cows would have a security interest over the milk produced by the encumbered cows. (3) Also, they argue that if a farmer opts to sell the raw milk to a raw milk processing plant, pursuant to the milk quota assigned by ORIL of a share of the fresh milk market, then the lien over the quota extend to the proceeds of such sales, irrespectively of if there is a lien over the cows that produced the milk. In support of their argument they reference to the authorization that is required from the lien holder for the farmer to rent milk quotas, which rents are also encumbered by the lien over the milk quota. (4) Their argument concludes by suggesting that their interpretation is "most consonant with *PR Asset Portfolio 2013-1 International LLC v. Tropical Heifers, Inc.* 2017 PR App. LEXIS 1294, 2017 WL 2462052 (P.R. Ct. of Appeals 2017)".

  5. As explained in the Chapter 12 Trustee memorandum (Dkt 92) the Governmental Agency entrusted with the enforcement of Registry of Quotas Transactions (5 L.P.R.A. §§ 1126 et seq.) is ORIL. Among its duties is to be the custodian of the Registry of Quota Transactions. (See. 5 L.P.R.A. §§ 1127)

  6. Condado's motion does not add any new arguments in support of its contention that their lien over the milk quota, that is only registered on ORIL and valid according to *PR Asset Portfolio* decision, can extend to anything other than milk quotas transactions. (*PR Asset Portfolio* decision did not deal with the extension of a lien, only registered on ORIL, to cows' products or account receivables from the sale of raw milk.) The term *transaction* is defined by the statute as "*[t]he sale, lease or bequest of the producer quota.*" See 5 L.P.R.A. § 1126(i). Accordingly, if the quota is sold, lease or bequest, the event is a *transaction* that is regulated under 5 L.P.R.A. §§ 1126 et seq. It follows that if the milk quota is encumbered by a valid lien, then the cash proceeds resulting from any of those *transactions* are also encumbered by the same lien. That is why the farmers whose milk

Case:18-07304-ESL12 Doc#:127 Filed:05/04/20 Entered:05/04/20 22:37:12 Desc: Main
Document Page 3 of 6

TRUSTEE'S OBJECTION TO CONDADO .... (DKT 123) 3
-----------------------------------------------------------------------------------------------------------

quota are encumbered need the consent of the lien holder to rent the same, and why the collected rents are cash collateral for the same secured creditor.

7. The fresh milk marked regulated by ORIL start with a farmer to whom a license is granted *as producer* to participate in the market, then a portion of the market production of every 14 days is assigned to him in the form of milk quotas ("*total quota*"). The sales of cows, farming equipment or the sale of raw milk outside the fresh milk market is outside the purview of ORIL. ORIL regulates the sales of raw milk to a raw milk processing plant, by designating the processing plant that the farmer must use to sell the milk produced and the price of the quart of milk that must be paid by the processing plant. Once the designated processing plant pick-up the raw milk at the farm, a sale transaction takes place where the processing plant is obligated to pay the farmer the price fixed by ORIL.

8. As personal property, commercial sales transactions of cows or raw milk, are regulated by 19 L.P.R.A. §§ 1221 et seq. — Puerto Rico Uniform Commercial Code ("UCC"). For a security agreement to attach to the cash proceeds of the sale of a cow or the sale of raw milk (account receivables), it must be properly included in a financial statement describing it as collateral of a credit transaction and recorded in the PR State Department pursuant to the UCC requirements. Also, only under the UCC a lien can extend to future proceeds of an encumbered asset. (See 19 L.P.R.A. § 2265) It is clear that Condado never intended for the producing cows to be collateral of their loans but did considered <u>account receivables</u> related to the raw milk sales transactions with Suiza Dairy, with a priority of $7,450 every 14 days. [See. Acuerdo de Gravamen Mobiliario POC 6-1 at page 25, "B. Contratos de Colateral", ¶2., see also page 146, "Colateral Y Clausulas", Part "Quinto", ¶ 1., see also UCC-1 No. 2005006313 at page 156, recorded on January 21, 2005] Nevertheless, the Financing Statement (UCC-1 No. 2005006312) originally filed with

Case:18-07304-ESL12 Doc#:127 Filed:05/04/20 Entered:05/04/20 22:37:12 Desc: Main Document Page 4 of 6

*TRUSTEE'S OBJECTION TO CONDADO .... (DKT 123)* 4
--------------------------------------------------------------------------------------------------------

the PR State Department and perfected under UCC § 2260(a), **expired** on January 21st, 2015, by operation of UCC § 2335(a).

9. Even, assuming that Condado had a pre-petition perfected security interest over the milk quota under ORIL 5 L.P.R.A. §§ 1126 et seq., the scope of the lien under said regulations does not extend to the raw milk produced by the cows or account receivables related to the post-petition raw milk sales transactions with Suiza Dairy. Under 11 USC § 552(a), property acquired post-petition (like the raw milk produced and sold post-petition) is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case, unless the creditor show applicable the exceptions under § 552(b), i.e. (1) that the security agreement extends to the after-acquired property upon which the creditor seeks the lien, and (2) that the after-acquired property is proceeds, product, offspring, rents, or profits of pre-petition property subject to the lien. The express terms of the security agreement generally govern the first prong, while state law generally governs the second prong. Condado's security agreement, neither under ORIL 5 L.P.R.A. §§ 1126 et seq. or under UCC 19 L.P.R.A. §§ 1221 et seq. regulations, support its claim of a lien over post-petition acquired property, i.e. the raw milk produced by the cows and or over the proceeds from the sale of raw milk (account receivables). See. *In In re Nat'l Promoters & Servs., Inc.*, 499 B.R. 192, 207, 2013 WL 4829162 (Bankr. D.P.R. 2013), the court cited *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 405.

10. Inasmuch as Condado did not had any pre-petition security agreement over milk producing cows, then the raw milk produced post-petition by those cows were post-petition acquired property free from any lien. On the other hand, the same is true regarding the account receivables that resulted from the sale of raw milk. In either case Condado did not had, at the time the petition was filed, a perfected valid security interest that could attach to the product of the cows or the proceeds from the sale of it (the account receivables).

Case:18-07304-ESL12 Doc#:127 Filed:05/04/20 Entered:05/04/20 22:37:12 Desc: Main
Document    Page 5 of 6

TRUSTEE'S OBJECTION TO CONDADO .... (DKT 123)                                                                    5
--------------------------------------------------------------------------------------------------------------------

11.     Accordingly, the court's determination that Condado's security agreement did not specified that the dairy cows or the raw milk produced by Debtor's dairy farm operation serve as collateral to the loans is a correct conclusion of fact. Also, the court's determination that since Condado's collateral does not include the cows, it may not claim that its security interest attaches to any identifiable proceeds of the cows, is a correct conclusion of law. Therefore, there is no manifested error of fact or of law in the court's Opinion and Order, Docket 120.

12.     For the reasons described above, Condado motion for reconsideration (Dkt. 123) should be denied.

WHEREFORE for the reasons described above, the Chapter 12 Standing Trustee objects Condado 5, LLC motion for reconsideration of Opinion and Order Dkt. No. 120, and request it be denied.

**LBR 9013-1 NOTICE:** Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

### Certificate of Service

I hereby certify on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

In San Juan, Puerto Rico this 4th day of May 2020.

> JOSE R. CARRION
> CHAPTER 12 STANDING TRUSTEE
> P.O. Box 9023884
> Old San Juan Station,
> San Juan, P.R. 00902-3884
> Tel (787) 977-3535
> FAX (787) 977-3550
>
> By: */s/ José R. Carrión*
>      USDC No. 203712