IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| IN RE: | CASE NO. 18-07304 (ESL) |
|---|---|
| VAQUERÍA LAS MARTAS, INC. | CHAPTER 12 |
| Debtor | |

**CONSOLIDATED REPLY TO THE CHAPTER 12 TRUSTEE'S OPPOSITION AND THE DEBTOR'S THREE RESPONSES TO CONDADO'S MOTION TO DISMISS**
(Related ECF Nos. 213, 216, 224, 230, 232)

TO THE HONORABLE COURT:

COMES NOW creditor Condado 5, LLC ("Condado"), through the undersigned counsel, and respectfully states and prays as follows:

Procedural Background

1. On February 8, 2021, Condado filed a *Motion to Dismiss Under 11 U.S.C. § 1208(c)* (the "*Motion to Dismiss*", ECF No. 213)[1] for Debtor's failure to file a timely confirmable plan, unreasonable delay or gross mismanagement by the debtor that is prejudicial to creditors, continuing loss to or diminution of the bankruptcy estate, and absence of a reasonable likelihood of rehabilitation. To avoid repetition, the *Motion to Dismiss* is incorporated by reference as if fully transcribed herein.

2. On February 12, 2021, the Debtor filed a *Response to Denial of Confirmation, Preliminary Response to Condado 5's Motion to Dismiss & Request for Emergency Measures to Allow Increase of Milk Production* (the "*Debtor's First Response*", ECF No. 216). Although titled "*Preliminary Response*", it is ultimately an opposition[2] to the *Motion to Dismiss*. The Debtor argues that: (a) "it cannot propose a new Plan at this time" because Condado has "intercept[ed] 100% of the … proceeds from the sale of raw milk" (id., at ¶¶ 3, 7); (b) Condado has "continued to intercept the milk proceeds in detriment to the debtor and its reorganization effort", which has

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Motion to Dismiss* (ECF No. 213).
[2] "[T]he substance of the motion, not the nomenclature used or labels placed on motions, is controlling." Velez Arcay v. Banco Santander De P.R (In re Velez Arcay), 499 B.R. 225, 235 (Bankr. D.P.R. 2013) (Lamoutte, B.J.) (citations omitted).

"caused diminishing milk production" (id., at ¶¶ 9, 11); (c) the Debtor "has been denied use or access to its milk proceeds and profits" for 25 months, resulting in the "continue[d] … decline" of the fairy farm (id., at ¶ 18); and (d) has been hit by two natural disasters, Hurricane Maria in 2017 and the COVID19 pandemic (id., at ¶ 22). The Debtor requests the *Motion to Dismiss* be denied (id., at p. 15) or, in the alternative, requests that payments to Condado be reduced and considered adequate protection payments "until the Appeal is decided", and the Debtor be allowed (in an interim basis) the bi-weekly use of 100% of the cash collateral obtained from the sale of raw milk[3] (id., at ¶ 24).

3. On February 16, 2021, Condado filed a *Motion for Leave to File Reply to Debtor's "Response to Denial of Confirmation, Preliminary Response to Condado 5's Motion to Dismiss & Request for Emergency Measures to Allow Increase of Milk Production"* (ECF No. 219), which the Court granted (ECF No. 226).

4. On February 19, 2021, the Chapter 12 Trustee filed his own *Opposition to Condado 5, LLC's Motion to Dismiss* (the "*Trustee's Opposition*", ECF No. 224), arguing that: (a) Condado has continued to retain all proceeds from the sale of raw milk and "failed to refund the Debtor all amounts retained [post-petition] from the sale of raw milk", which the Trustee claims "are vital" for the Debtor to submit a feasible and confirmable plan (id., at ¶ 4); and (b) "Debtor's problems with feasibility and the delay in obtaining confirmation of a plan is directly caused by Condado's own actions" (id., at ¶ 5).

5. On February 19, 2021, Condado filed a *Motion for Leave to Reply to Chapter 12 Trustee's "Opposition to Condado 5, LLC's Motion to Dismiss" or Otherwise Plead and for Extension of Time* (ECF No. 227), which was granted by the Court (ECF No. 229).

6. But then, on February 22, 2021, the Debtor filed another *Opposition to Condado 5, LLC's Motion to Dismiss* (the "*Debtor's Second Response*", ECF No. 230), arguing that: (a) it "has

---

[3] This remedy was requested by the Debtor in Section B of its *Motion to Determine that Milk Sale Proceeds Are Not Cash Collateral, or in the Alternative, Request to Use Cash Collateral to Avoid Continuing to the Estate Pending Final Hearing Pursuant to §363(c)(2) & Fed. R. Bankr. P. 4001(b)(2)* (ECF No. 33, pp. 9-12).

no income to operate its business" because Condado has seized the proceeds from the sale of raw milk (id., at ¶ 1); (b) the "question of who has the right to the milk proceeds will decide if debtor has a feasible Chapter 12 Plan" (id., at ¶ 2); (c) adopted the *Trustee's Opposition* and its arguments on the vitality that post-petition milk proceeds be returned (id., at ¶ 3); and (d), the Debtor's plan (which has yet to be filed) "becomes feasible" "[i]f the milk proceeds belong to the estate" (id., at ¶ 4). Lastly, in a moment of self-awareness, the Debtor avers that if the District Court were to reverse this Court's *Opinion and Order* (ECF No. 120), "that decision may seal debtor's fate" (id., at ¶ 5), thereby admitting that it cannot propose a confirmable plan even after two years in bankruptcy.

7. Inexplicably, on February 23, 2021, the Debtor filed yet another *Supplemented Opposition to Condado 5, LLC's Motion to Dismiss* (the "*Debtor's Third Response*", ECF No. 232), arguing that: (a) Condado has not demonstrated that the Debtor has failed to act diligently or reasonably throughout the case, unreasonably failed to comply with any Court orders, repeatedly or unreasonably failed to meet deadlines imposed the Court or by the Bankruptcy Code (id., at ¶ 5); and (b) Condado has suffered no prejudice from the Debtor's delay, and was instead favored by it (id., at ¶ 4). The Debtor again contemplates its situation and laments that if the District Court were to reverse this Court's *Opinion and Order* (ECF No. 120), "that decision may seal debtor's fate" (id., at ¶ 10).

8. On March 11, 2021, Condado filed a *Motion for Extension of Time to File Consolidated Reply to the Chapter 12 Trustees Opposition and the Debtors Three Responses to Condado's Motion to Dismiss* (ECF No. 240), which was granted by the Court (ECF No. 241).

Applicable Law and Discussion

*(A)    Debtor's Failure to Meet Deadlines*

9. Neither the Debtor nor the Trustee dispute that the Debtor has consistently failed to file timely monthly operating reports. See *MOR Table*, *Motion to Dismiss*, ECF No. 213, p. 6. Moreover, neither the Debtor nor the Trustee dispute the other deadlines missed by the Debtor

as itemized in our *Motion to Dismiss*. The Debtor proffers no justification for its failure to comply. Conversely, and quite surprisingly, the Debtor categorically states that Condado has not demonstrated that it has failed to act diligently or reasonably throughout the case, unreasonably failed to comply with any Court order, or repeatedly or unreasonably failed to meet deadlines imposed this Court or the Bankruptcy Code. See *Debtor's Third Response*, ECF No. 232, p. 2, ¶ 5. In the alternative, the Debtor argues that Condado has suffered no prejudice from the Debtor's delay (id., p. 1, ¶ 4).

10. As discussed in our *Motion to Dismiss*, a corporate Chapter 12 debtor, like the Debtor in this case, has a duty to file monthly operating reports and failure to timely file them is cause for dismissal. See In re Weber, 297 B.R. 567, 572 (Bankr. N.D. Iowa 2003) ("failure to file monthly reports or provide the Trustee with other required financial information can also be grounds for dismissal"); In re Gribbins, 242 B.R. 637, 642 (Bankr. W.D.Ky. 1999), aff'd, 43 Fed. Appx. 861 (6th Cir. 2002) (dismissing a Chapter 12 case post-confirmation based, *inter alia*, on the debtor's failure to file monthly reports); In re Akers, 594 B.R. 362, 375 (Bankr. W.D. Va. 2019), aff'd *sub nom*, Akers v. Micale, 609 B.R. 175 (W.D. Va. 2019) ("unreasonable delays can result from failure to timely file documents, failure to file a confirmable plan, failure to file a modified plan, or failure to perform under a confirmed plan."), citing In re French, 139 B.R. 476, 476 (Bankr. D.S.D. 1992) (underline added).

11. In regard to the other deadlines missed by the Debtor, including the one to file a timely confirmable plan, we remit to our discussion in the undisputed *Motion to Dismiss*.

12. With respect to the Debtor's argument that Condado has not been harmed by the Debtor's delay, this Court has upheld that "[i]n bankruptcy, delays and the passage of time prejudice creditors and make feasibility of plans less likely." In re Lopez-Llanos, 578 B.R. 700, 711 (Bankr. D.P.R. 2017) (Lamoutte, B.J.). "Section 1307(c)(1) [identical to Section 1208(c)(1)[4]]

---

[4] The only difference between these two sections is that Section 1208(c)(1) also includes the phrase "or gross mismanagement". Compare 1208(c)(1) with Section 1307(c)(1).

-4-

is concerned with prejudice suffered by creditors from delay, not the predicted harm to be suffered by a debtor from dismissal." Id., at 710-711, citing In re Woods, 2012 Bankr. LEXIS 2848, at *7, 2012 WL 2343897, at *2 (Bankr. D. Idaho 2012). Also see In re Rivera Sanchez, 80 B.R. 6, 8 (Bankr. D.P.R. 1987) (Lamoutte, B.J.) (dismissing case "for unreasonable delay prejudicial to creditors and for denial of having the plan confirmed.").

13. Condado notes that **despite being put on notice** that failure to timely file monthly operating reports is cause for dismiss, the Debtor is still filing operating reports late without any justification for the delay whatsoever. For instance, the operating report for the period of February 2021 was filed on March 24, 2021, at 10:15 PM, that is, beyond the deadline imposed by PR LBR 2015-2(a) without proffering any excuse for the delay.

14. The fact that the Chapter 12 Trustee opposes dismissal is puzzling, especially because he is called to observe compliance with these requirements[5].

*(B) The Debtor's Proposed Solution to its Lack of Feasibility is Procedurally Improper*

15. The Debtor and the Trustee are united in their position that the Debtor is unable to file a confirmable plan unless post-petition milk proceeds are returned following this Court's *Opinion and Order* (ECF No. 120), whose appeal is stayed based on the pendency of the foregoing *Motion to Dismiss*. See Case No. 20-cv-01344, ECF No. 35. However, neither party has ever moved nor placed this Court in a proper position to rule that the collection of post-petition milk proceeds must be returned or halted after more than two years in bankruptcy. Even as of today, without a proposed plan of reorganization, the case remains to be like a drifting ship without a compass or course.

16. By way of example, on January 25, 2021, the Debtor filed a *Motion to Enforce Ruling* (ECF No. 210) under 11 U.S.C. § 105(a), which was denied as procedurally improper for

---

[5] "It is the sole responsibility of the trustee to thus administer estate assets, subject to supervision by the U.S. Trustee and pursuant to the Bankruptcy Code and Rules." Hon Joan N. Feeney *et al*, 1 Bankruptcy Law Manual § 4:7 (5th ed. 2020) (underline added). The US Trustee, of course, "is charged to serve as a watchdog to protect the integrity of the bankruptcy system". In re Youk-See, 450 B.R. 312, 323 (Bankr. D. Mass. 2011).

the reasons stated in open Court. See *Minutes of Hearing Held on January 26, 2021*, ECF No. 211 ("section 105 cannot override the divestiture rule on a matter closely related to the one on appeal"). Thereafter, the Debtor requested, as an alternative remedy, that post-petition milk proceeds be considered adequate protection payments, and be reduced, until the appeal is decided, and that it be allowed (in an interim basis) the bi-weekly use of 100% of the cash collateral obtained from the sale of raw milk in *Debtor's First Response* (ECF No. 216, at ¶ 24). The forgoing requested is premised on Section B of Debtor's *Motion to Determine that Milk Sale Proceeds Are Not Cash Collateral, or in the Alternative, Request to Use Cash Collateral to Avoid Continuing to the Estate Pending Final Hearing Pursuant to §363(c)(2) & Fed. R. Bankr. P. 4001(b)(2)* (ECF No. 33, pp. 9-12). But each request was or is devoid of appropriate legal grounds, proper procedural avenues, denied or otherwise not granted by this Court.

17. Condado is under no obligation to educate the Debtor on pursuing bankruptcy relief. However, neither 11 U.S.C. §§ 105(a), § 363(c)(2), (e), nor an opposition to a motion to dismiss are substantively and/or procedurally appropriate to support or house the Debtor's/Trustee's request. Absent a request that is premised on appropriate legal grounds, the Debtor will continue to be unable to propose a confirmable plan to the detriment of creditors, including Condado. And again, such request would come after two (2) idle years in bankruptcy, which makes feasibility less and less likely with each passing day. See In re Lopez-Llanos, 578 B.R. at 711.

*(C) The Debtor is Unable to Propose a Confirmable Plan.*

18. Assuming *in arguendo* that the Debtor would be able to surpass these hurdles, it has run out of time and is unable to propose a confirmable plan in its best-case scenario at this late juncture.

19. The Debtor filed for Chapter 12 of relief on December 14, 2018 (ECF No. 1), and has been in bankruptcy for two (2) years, three (3) months, and sixteen (16) days. Pursuant to 11 U.S.C. § 1222(b)-(c), a Chapter 12 debtor must propose a repayment plan to make installments

to creditors over a period of three to five (5) years. Specifically, a debtor's proposed plan "may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court **may not** approve a period **that is longer than five years**." 11 U.S.C. §§ 1222(c) (boldface added). Because a plan of reorganization may not be longer than five (5) years, the Debtor <u>**must make all plan payments within the two (2) years, eight (8) months, and fourteen (14) days remaining, that is, about 33 months altogether**</u>.

20. The Debtor's only *Plan* filed (ECF No. 137), <u>which presents its most favorable reorganization scenario</u>[6], was denied for lack of feasibility and failure to provide for Condado's secured claim (*Minutes of Hearing Held on January 26, 2021*, ECF No. 211), proposed the following treatment for some of the collateral securing Condado's claim:

> III Condado 5 to be paid value of its secured claim #6 [$205,000 residence Paseo Esmeralda, Arecibo + $109,118 27.28 cuerdas Bo. Naranjio, Hatillo] **@ $313,118 w/ 4.5% over principal x 15 yrs amortized claim @ $2,395.33 monthly for 15 years** to be paid directly to Condado 5, or its assignees, by Suiza Dairy, commencing within 30 days from confirmation of Plan.
> …
> V **The approximately $1,354,907 general unsecured claims will be paid pro-rata at an approximate net dividend of at least $394,879 of timely filed claims [at approximately a 29% payout]**.
>
> VII The step up payments to the Plan are needed to allow debtor at least 6 months from the date of confirmation of the Plan and cessation of collection by Condado 5 of Debtor's milk profits from Suiza Dairy to increase current low milk production by retaining maximum revenue for operation of dairy farm for maximized payout to both the bankruptcy estate & to secured creditor, Condado.
>
> VIII Condado 5 shall forthwith cease collection of what has been 100% of Debtor's profits from milk sales to Suiza Dairy during more than two years to avoid further damage to Debtor's organization effort. With the funds which Condado 5 shall cease to collect forthwith, Debtor will fund its Plan and inject much needed capital into the operation and growth of its dairy farm for a successful reorganization effort.
>
> IX Condado 5 to immediately reimburse Debtor for the preferential payments made by Suiza Dairy to Condado 5 from September 15, 2018 through at least May 31st, 2020, [or until the monthly collection ceases] from the sale of Debtor's milk to Suiza Dairy Corporation.
>
> X The projections that support this Plan have factored in the anticipated reimbursement of preferential payments collected by Condado 5 on milk sales not subject to its lien from Suiza Dairy in the approximate amount of at least $77,925

---

[6] Pursuant to the *Debtor's First Response*, "it cannot propose a new Plan at this time" (ECF No. 216, p. 1, ¶ 3).

during the pendency of this case since December 2018 until May 2020 and those collected 90 days before the bankruptcy petition when Condado 5's UCC had already lapsed. The reimbursement of these amounts are vital to the purchase of cows and the operation of the dairy farm in order to boost production which has suffered from severe stagnation as a result of payment to Condado 5 of 100% of its profits from the sale of milk for over two years, and no compensation to Debtor for its work effort.

Id., p. 2, §§ III-X (boldface added).

21. That is, the Debtor proposed to pay the "secured" portion of Condado's claim of $1,626,362.59 (Proof of Claim 6-1), which the Debtor alleges is "$313,118", through monthly payments of $2,395.33 for 15 years (180 months); and the remaining "$1,354,907" of Condado's claim *pro rata* as a general unsecured claim, with "an approximate net dividend of at least $394,879" (a "29% payout") commencing within 30 days from date of confirmation. Id. The proposed plan is unfeasible, and Debtor is unable to comply with its proposed treatment.

22. For the sake of illustration, we will analyze the monthly and weekly operating reports filed by the Debtor in its First Bankruptcy Case (Case No. 11-05236), which was dismissed upon the Trustee's request for material default with the terms of the confirmed plan. In its First Bankruptcy Case, Debtor's average monthly net income was approximately **$8,850.60**. See *Operating Reports*, Case No. 11-05236, ECF Nos. 30, 50, 82, 101, 103, 107, 108, 112, 127, 128, 129, 120, 132, 135, 139, 141, 162, 164, 192, 197, 198, 199, 207, 208, 209, 244, 248.

23. For the sake of argument, to comply with the "29% payout" or "approximate net dividend of at least $394,879" proposed by the Debtor, it would need to produce enough milk to sustain a minimum monthly net income of **$11,966** ($394,879 ÷ 33 months = $11,966), **this in addition to Debtor's proposed monthly payments of $2,395.33** on account of the alleged "secured" portion of Condado's claim.

24. Despite the Debtor and the Trustee's averments, Condado is not the root or cause of the Debtor's financial failings. Plainly, the Debtor is unable to comply with payments under the *Plan* in the short months remaining even without Condado "intercepting" post-petition milk proceeds. *Debtor's First Response*, ECF No. 216, ¶ 7.

25. Condado thus sustains that dismissal, rather than conversion, is in the best interest of the creditors and the bankruptcy estate.

*(D) Contrary to the assertions by the Debtor and the Trustee, Condado is prejudiced by the undue delay.*

26. The Debtor and the Trustee repeat in unison in that Condado is not harmed, but rather benefits, from the Debtor's delay in this case. A cursory review of the docket of the instant case reveals otherwise.

27. During this long two-year process, Condado has had to appear and defend itself from continuing attacks, past and present, from both the Trustee and the Debtor seeking to avoid the totality of its security interests, even after the *Opinion and Order* (ECF No. 120), to no avail, and is currently working and incurring additional costs to foreclose on this same loan. Again, it must be underscored that this loan matured and has been past due and payable in full since January 12, 2015. See Proof of Claim No. 6, pp. 6, 47. This translates to continuing increasing costs and attorneys' fees, including a recent contested matter geared towards the total avoidance of Condado's lien by the Trustee in his objection to Condado's claim, which was denied by the Court. See ECF Nos. 225, 236 and 237. Additionally, on January 29, 2021, the Court denied the confirmation of the proposed *Plan* "for lack of feasibility and for failure to provide for secured claim number 6 by Condado" (ECF No. 211), and the Debtor, as of yet, has not attempted to propose any alternate plan whatsoever.

28. The Debtor and the Trustee also aver that this case hinges on the outcome of the current appeal and thus, intend confirmation proceedings to be permanently stayed until the District Court rules on the appeal. See *Trustee's Opposition*, ECF No. 224, p. 2, ¶ 6; *Debtor's Second Response*, ECF No. 230, pp. 1-3, ¶¶ 2 and 5; *Debtor's Second Response*, ECF No. 232, p. 3, ¶ 10. But the Debtor is estopped from assuming such position, because when Condado sought a stay pending appeal in this case (ECF No. 181), the Debtor opposed it[7] (ECF No. 189),

---

[7] The Trustee has also sided with the Debtor in this argument, asserting and insinuating time and time again that Condado lost its stay pending appeal and this case cannot continue further with reorganization effort (in essence staying

and the Court ruled in favor of the Debtor (ECF No. 190). Accordingly, the Debtor is now judicially estopped from asserting this position in its opposition to Condado's *Motion to Dismiss*. See Robles Carmona v. Osnet Wireless Corp., 2020 Bankr. LEXIS 662, at *10, 2020 WL 1237919, at *3 (Bankr. D.P.R. 2020) (Lamoutte, B.J.) (explaining the standard and purpose of the doctrine of "judicial estoppel"), citing New Hampshire v. Maine, 121 S. Ct. 1808, 149 (2001), InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003), and Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010). And so is the Trustee under the claim preclusion doctrine[8].

29. Thus, this case cannot be in effect "stayed" confirmation-wise and remain without any direction towards confirmation or simply remain at a standstill. Viewed in the totality of the circumstances, including failures to comply with court ordered deadlines and obligations to timely file operating reports (which have not been disputed by the Debtor or the Trustee), we submit that there is ample cause to dismiss the instant case.

30. Lastly, the Debtor and the Trustee also aver that Condado has "seized"[9], "retain[ed and] failed to refund"[10] post-petition milk proceeds, which they contend to be the sole reason why the Debtor cannot move forward with any reorganization process. Assuming *in arguendo* their depiction, that argument cannot overshadow the fact that in over two years neither has moved this Court with the proper remedy(ies) or the appropriate procedural avenues so that Condado may assert its due process defenses.

31. At this juncture, the undue delay that warrants dismissal.

---

the totality of this case). See *Trustee's Opposition*, ECF No. 224, pp. 1-2, ¶¶ 4-5. The Trustee in this regard would be equally estopped to assert this same argument by claim preclusion. See In re Frau, 2014 Bankr. LEXIS 1631 (Bankr. D.P.R. 2014) (Lamoutte, B.J.) (discussing the doctrine of claim preclusion and collateral estoppel). In fact, the Trustee would be even further estopped considering that he has voluntarily dismissed his cross-appeal with the District Court upon the recent decision by the PR Supreme Court in PR Asset Portfolio 2013-1 Int'l, LLC v. Tropical Heifers, Inc., 2021 T.S.P.R. 30, 206 D.P.R. —— (2021). See **Exhibit I**. For the sake of judicial economy, Condado seeks leave to file **Exhibit I** in Spanish and, if an appeal should be taken, it will provide certified translations.

[8] Condado has requested the District Court to stay the appellate proceedings until the resolution of the pending *Motion to Dismiss*, for its ultimate decision may render the appeal moot (Case No. 20-cv-01344, ECF No. 29), which the District Court granted (Case No. 20-cv-01344, ECF No. 35).

[9] *Debtor's Second Response*, ECF No. 230, p. 1, ¶ 1.

[10] *Trustee's Opposition*, ECF No. 224, p. 1, ¶ 4.

Prayer for Relief

WHEREFORE, Condado respectfully prays the Court (a) deny the *Debtor's First Response*, the *Trustee's Opposition, th*e *Debtor's Second Response*, and the *Debtor's Third Response*, (b) dismiss the instant case for cause under 11 U.S.C. § 1208(c), and (c) grant any other relief it deems just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 30th day of March, 2021.

Certificate of Service

We hereby certify on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

**Ferraiuoli LLC**
Attorneys for Condado
PO Box 195168
San Juan, PR 00919-5168
Tel.: (787) 766-7000
Fax: (787) 766-7001

*/s/ Sonia E. Colón*
SONIA E. COLÓN
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

*/s/ Camille N. Somoza*
CAMILLE N. SOMOZA
USDC-PR No. 302908
csomoza@ferraiuoli.com

/s/ Frances C. Brunet-Uriarte
FRANCES C. BRUNET-URIARTE
USDC-PR No. 307006
fbrunet@ferraiuoli.com