**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

———————————————

**BAP NO. PR 21-017**

———————————————

**Bankruptcy Case No. 18-07304-ESL**

———————————————

**VAQUERIA LAS MARTAS, INC.,**
**Debtor.**

———————————————

**VAQUERIA LAS MARTAS, INC.,**
**Appellant,**

**v.**

**CONDADO 5, LLC,**
**Appellee.**

———————————————

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Enrique S. Lamoutte, United States Bankruptcy Judge)**

———————————————

**Before**
**Cary, Fagone, and Katz,**
**United States Bankruptcy Appellate Panel Judges.**

———————————————

**Richard L. Antognini, Esq., and Lysette A. Morales Vidal, Esq., on brief for Appellant.**
**Sonia E. Colón, Esq., Gustavo A. Chico-Barris, Esq., and Frances C. Brunet-Uriarte, Esq.,**
**on brief for Appellee.**

———————————————

**April 21, 2022**

———————————————

**Cary, U.S. Bankruptcy Appellate Panel Judge.**

Vaqueria Las Martas, Inc. (the "Debtor") appeals from the bankruptcy court's order dismissing its chapter 12 case for "unreasonable delay prejudicial to creditors" and "failure to file a timely confirmable plan."[1]  For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

The Debtor is a duly licensed dairy farm in Puerto Rico.  Its assets include livestock and a raw milk production quota authorizing it to produce fresh milk in a prescribed amount every 14 days.[2]

### I.    Pre-Petition Events

In January 2005, Banco Popular de Puerto Rico ("BPPR") loaned $1,850,000 to the Debtor, secured by 58,700 quarts of the Debtor's milk quota and real property owned by J.M. Dairy, Inc. and Juan M. Barreto Ginorio (the president and owner of both the Debtor and J.M. Dairy, Inc.).  BPPR subsequently assigned the loan to a third party, who in turn assigned it to Condado 5, LLC ("Condado").  The Debtor has been in default of its obligations under the loan since January 2015.

---

[1]  References to the "Bankruptcy Code" or to specific statutory sections or chapters are to 11 U.S.C. §§ 101-1532, unless otherwise noted.  References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[2]  In Puerto Rico, dairy farm licenses are issued by the Office for the Regulation of the Dairy Industry (also known by the Spanish-language acronym, "ORIL"), a division of the Puerto Rico Department of Agriculture.  See P.R. Laws Ann. tit. 5, §§ 1092–1125a.  ORIL is also responsible for selling milk quotas to dairy farmers for the purpose of limiting their milk production.  González-Álvarez v. Rivero Cubano, No. 03-2193 HL/GAG, 2004 WL 4961018, at *1 (D.P.R. July 23, 2004).  "A dairy farmer's milk quota is an asset which can be sold, leased, or used as collateral for credit."  Milk Ind. Regulatory Office of the Commonwealth of P.R. v. Rosa Dairy Farm, Inc. (In re Rosa Dairy Farm, Inc.), 622 B.R. 806, 808-09 (B.A.P. 1st Cir. 2020) (citing, inter alia, P.R. Laws Ann. tit. 5, § 1135).

## II.    The Bankruptcy Filing and Post-Petition Events

The Debtor first filed for bankruptcy relief under chapter 12 in June 2011.  That case was eventually dismissed in August 2018 and, three-and-a-half months later, on December 14, 2018, the Debtor commenced this case.  On its amended schedules, the Debtor indicated that it owned 45 cows, 13 of which were designated as milking cows.  The Debtor also scheduled Condado as the holder of a $1,619,500.29 claim, secured by the Debtor's milk quota, which it valued at $1,017,400.00.

### A.    Condado's Motion to Prohibit Use of Cash Collateral and the Debtor's Objection

In February 2019, Condado filed proof of claim no. 6, asserting a $1,626,362.59 claim for "[m]oney loaned," secured by a lien on real estate.[3]  In the same month, citing § 363(e), Condado filed a motion to prohibit the Debtor from using its cash collateral and to obtain an order authorizing Condado to collect the proceeds from the Debtor's milk production (the "Motion to Prohibit Use of Cash Collateral").  In support, Condado asserted it held a "first priority pre-petition security interest over the Debtor's milk quota" and "the Debtor's income from the milk quota."  The court scheduled the motion for a hearing and entered an interim order prohibiting the use of cash collateral.

In its objection, the Debtor countered that Condado was already "receiving 100% of the [proceeds of] milk production."  In addition, the Debtor asserted that Condado's claim was unsecured because its UCC-1 Financing Statements had "lapsed."

---

[3]  The proof of claim did not mention the Debtor's milk quota as security for the claim.

### B.      The Debtor's Cash Collateral Motion and the March 2019 Hearing

On March 4, 2019, the Debtor filed a motion seeking a determination that its milk quota did not constitute cash collateral (the "Debtor's Cash Collateral Motion").  In the alternative, the Debtor offered $1,300 monthly payments "to adequately protect Condado . . . for the use of its cash collateral."

At the March 2019 hearing on the motion, the court ruled that Condado was a secured creditor with a lien on the Debtor's milk quota but questioned whether that lien extended to the proceeds from the sale of the raw milk.  The court, therefore, ordered briefing on the issue.

On March 18, 2019, in its court-ordered brief, Condado asserted that the parties' security agreement granted Condado a lien "over the interests, rents and proceeds arising from the milk quotas and the continuing production of milk under the quotas every 14 days."  It also challenged the Debtor's assertion that Condado's claim was unsecured because its UCC-1 Financing Statements had lapsed, maintaining that the relevant security agreement had been timely and duly registered.

### C.      The First Motion to Dismiss and the Order to Show Cause

Meanwhile, on March 18, 2019, the bankruptcy court issued an order to show cause, directing the Debtor to demonstrate why its case should not be dismissed for failure to file a plan. The Debtor responded by asserting that the omission was an oversight, its Cash Collateral Motion remained pending, and its attorney was experiencing medical issues.[4]

Two days after the court issued the order to show cause, Condado filed its first motion to dismiss the Debtor's chapter 12 case under § 1208(c) (the "First Motion to Dismiss"), arguing,

---

[4]  A review of the bankruptcy court's docket suggests that the court never vacated or otherwise acted upon the order to show cause.

among other things, that the Debtor failed to file any monthly operating reports ("MORs").

After the Debtor filed MORs in May, June, and July 2019, the court denied the First Motion to

Dismiss, reasoning "dismissal [wa]s not in the best interest of the estate, [and] the MORs [we]re

current, albeit not timely filed . . . ."[5]  Although the court acknowledged that Condado "ha[d] a

lien over the milk quota," it questioned whether "the milk produced by the cows" was also

subject to that lien.  After requiring further briefing, the court took this question under

advisement on December 11, 2019.

### D.      The April 15, 2020 Ruling Regarding the Extent of Condado's Lien

On April 15, 2020, the court issued an opinion and order, concluding that neither the milk

produced by the Debtor's cows nor the income generated from the sale of that milk were subject

to Condado's lien (the "April 15, 2020 ruling").  It reasoned:

> The security agreement does not specify that the dairy cows or the raw milk
> produced by Debtor's dairy farm operation serve as collateral to the loans.  The
> milk is produced by the cows. . . .  Since Condado's collateral does not include
> the cows, it may not claim that its security interest attaches to any identifiable
> proceeds of the cows.

In re Vaqueria Las Martas, Inc., 617 B.R. 429, 441 (Bankr. D.P.R. 2020).  Thereafter, Condado

filed a motion for reconsideration, which the court denied in July 2020.  Condado then appealed

the April 15, 2020 ruling to the district court (No. 20-cv-01344-ADC).

### E.      The Plan, Objections to Confirmation, and the Order Denying Confirmation

On June 1, 2020, approximately a year-and-a-half after the commencement of its

bankruptcy case, the Debtor finally filed a chapter 12 plan (the "Plan").  Among other things, the

Plan provided: (1) Condado would "cease collection" of the proceeds of the sale of the Debtor's

milk to Suiza Dairy and would "immediately reimburse" the Debtor for payments made by Suiza

---

[5]  See discussion infra p. 22 n.8 (regarding the reporting requirement in chapter 12 cases).

Dairy to Condado from September 15, 2018 through at least May 31, 2020; (2) Condado would be paid $313,118.00 on its secured claim, with $2,395.33 monthly payments commencing within 30 days of confirmation and continuing for 15 years; and (3) Condado would receive a 29% dividend on its unsecured claim. With the anticipated milk proceeds that Condado would cease to collect, the Debtor would fund the Plan.

The court scheduled a hearing for October 27, 2020 to consider Plan confirmation. In the interim, on June 29, 2020, the Trustee objected to confirmation, asserting the Plan was not feasible under § 1225(a)(6) because: (1) success of the Plan depended on the Debtor's ability to obtain "full access" to the proceeds of its milk production; and (2) the financial condition of the Debtor did not support the Plan projections.

On August 31, 2020, Condado also filed an objection to confirmation, arguing the Plan's proposed treatment of its claim ignored its security interest in the Debtor's milk quota. Asserting that its claim was "fully secured by a lien over the totality of the Debtor's milk quota," Condado further complained that the Plan proposed to pay Condado only $313,118.00 on its $1,626,362.59 secured claim and nearly tripled "the original repayment term." Moreover, Condado maintained the Plan was "entirely speculative," because it was contingent on the immediate reimbursement of the proceeds from the Debtor's milk production, the termination of the collection of those proceeds, and the outcome of the district court appeal of the April 15, 2020 ruling.

On October 2, 2020, the bankruptcy court entered an order rescheduling the hearing on confirmation from October 27, 2020 to January 26, 2021. A week before that hearing, the Trustee again objected to confirmation, reasserting that the Plan failed to satisfy the feasibility requirements of § 1225(a)(6). As grounds, he maintained: (1) the "Debtor's business depend[ed]

6

on the reimbursement of at least $77,925 from Condado"; (2) the Debtor "failed to submit

monthly operating reports for November and December 2020"; and (3) the outcome of the

district court appeal "might adversely affect the feasibility" of the Plan.

On January 24, 2021, two days before the confirmation hearing, the Debtor filed a

combined response to the Plan confirmation objections of Condado and the Trustee (the

"Debtor's Combined Response").  Asserting that Condado continued to seize all the proceeds

from the sale of the Debtor's milk, the Debtor maintained that confirmation was not "viable."

The Debtor blamed Condado for its inability to propose a feasible plan.  In addition, the Debtor

reported that its milk production had dwindled to 5.7% of its quota.  Accordingly, the Debtor

asked the court to overrule the objections to confirmation, adding "[t]he case [wa]s not ready for

confirmation" and the Plan would not be confirmable until the Debtor recouped the milk

proceeds seized by Condado.

The next day, the Debtor filed a motion seeking an order under § 105 directing Condado

to turn over all of the "milk proceeds" it seized during the case (the "Motion to Enforce").

### F.    Order Denying Confirmation

Following a hearing on January 26, 2021, the bankruptcy court entered an order,

memorialized in the minutes of the hearing, denying confirmation of the Plan "for lack of

feasibility and failure to provide for" Condado's secured claim (the "Order Denying

Confirmation").  In so doing, the court highlighted the Debtor's representation that the Plan

would "not be viable until, at least, 6 months after Condado cease[d] the retention of the milk

proceeds."

Noting the pendency of the district court appeal of the April 15, 2020 ruling, the court

also entered an order denying the Motion to Enforce (the "Order Denying Motion to Enforce").

concluding "that the equity powers of section 105 of the Bankruptcy Code cannot override the

divestiture rule . . . ."

The Debtor did not appeal the Order Denying Confirmation.  It did, however, appeal the

Order Denying Motion to Enforce to the district court (No. 21-cv-01081-PAD).

### G.    The Second Motion to Dismiss, Debtor's Objections to the Second Motion to Dismiss, Trustee's Objection to Condado's Proof of Claim, and Condado's Reply

#### 1.    The Second Motion to Dismiss

On February 8, 2021, Condado filed its second motion to dismiss (the "Second Motion to

Dismiss"), which is the subject of this appeal.  As grounds for dismissal, Condado pointed to:

> Debtor's failure to file a plan timely confirmable, unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors, and continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation pursuant to 11 U.S.C. §§ 1208(c)(1), 1208(c)[ ](3), and . . . 1208(c)(9) respectively.

As legal support, Condado cited In re Rivera Sanchez, 80 B.R. 6, 7 (Bankr. D.P.R. 1987), where

the court ruled that a chapter 12 case may be dismissed for unreasonable delay, as well as several

cases from courts beyond this circuit holding that dismissal of a chapter 12 case is appropriate

when the debtor fails to propose a confirmable plan.  In addition, Condado argued that the

Debtor had filed only six out of 28 MORs on time.  Finally, Condado presented a chart which

depicted a steady decline in the Debtor's milk production and cows since the inception of the

case.  The chart reflected that, at the commencement of the case in December 2018, the Debtor

produced 8.86% of its milk quota with 41 cows, whereas in December 2020, it produced 5.70%

of its milk quota with 20 cows.[6]  Condado concluded by arguing that the "totality of the

---

[6]  Although the number of cows reflected in the chart as owned by the Debtor at the commencement of the case differs slightly from the number listed in the Debtor's amended schedules, the discrepancy is inconsequential.

8

circumstances, the bankruptcy estate's continuing decline, the Court's denial of the proposed

Plan, the Debtor's consistent delays and non-compliance[ ] with the applicable deadlines, and the

passage of two years without [a] reasonable likelihood of reorganization" all warranted dismissal

under § 1208(c). (emphasis omitted).

### 2.    The Debtor's Response

On February 12, 2021, the Debtor filed a combined "response" to the Order Denying

Confirmation and the Second Motion to Dismiss (the "Response to Denial of Confirmation"). In

it, the Debtor complained that Condado continued to intercept the proceeds from the sale of raw

milk to Suiza Diary and further maintained that "[p]rojections to support any Plan w[ould]

continue to be conditioned on the [D]ebtor receiving the fruits of its labor . . . ." The Debtor

denied there was "unusual delay" in its case, insisting that, since the very inception of the case, it

had sought a determination that milk proceeds were not subject to any lien. To explain any

delay, the Debtor pointed not only to Condado's conduct but also to Hurricane Maria in 2017

and the COVID-19 pandemic. Accordingly, the Debtor requested: (1) an order staying the filing

of a new plan; (2) an order denying the Second Motion to Dismiss; (3) an order deeming the

payments intercepted by Condado cash collateral payments; and (4) an order allowing "for the

lease of part of the unused milk quota."

### 3.    The Trustee's Opposition to Second Motion to Dismiss and Objection to Claim

On February 19, 2021, the Trustee filed an opposition to the Second Motion to Dismiss,

arguing the "Debtor's problems with feasibility and the delay in obtaining confirmation of a plan

[were] directly caused by Condado's own actions." On the same date, the Trustee also filed an

objection to Condado's proof of claim ("Trustee's Claim Objection"), arguing that Condado did

"not have a valid lien over the proceeds of [the] Debtor's raw milk sales, or the accounts

9

receivable[ ] resulting from such sales," as its UCC-1 Financing Statement had expired.  In order

to have a valid lien on a milk quota, the Trustee maintained, a creditor must have *both* a valid

UCC-1 Financing Statement and a recorded lien at ORIL's Registry of Quota Transactions.  The

bankruptcy court overruled the Trustee's Claim Objection without prejudice to the filing of an

adversary proceeding pursuant to Bankruptcy Rules 3007(b) and 7001(1).  No adversary

proceeding was commenced.

### 4.    Condado's Reply to Oppositions to Second Motion to Dismiss

On March 30, 2021, Condado filed a "Consolidated Reply to the Chapter 12 Trustee's

Opposition and the Debtor's Three Responses to Condado's [Second] Motion to Dismiss."

Condado argued the Debtor's acknowledgement that a reversal of the April 15, 2020 ruling by

the district court might "seal its fate" amounted to an admission that it could not "propose a

confirmable plan even after two years in bankruptcy."  In further support of dismissal, Condado

asserted neither the Trustee nor the Debtor disputed that the Debtor had "consistently failed to

file timely" MORs.  In fact, Condado noted, despite the pendency of the Second Motion to

Dismiss, the Debtor persisted in filing its MORs late.  Quoting In re Lopez Llanos, 578 B.R. 700,

711 (Bankr. D.P.R. 2017), Condado challenged the notion that the asserted delays had not caused

any harm, observing that in "bankruptcy, delays and the passage of time prejudice creditors and

make feasibility of plans less likely."

### H.    The Order Granting the Second Motion to Dismiss

On April 22, 2021, without a hearing, the bankruptcy court entered an order granting the

Second Motion to Dismiss (the "Dismissal Order").  See In re Vaqueria Las Martas, Inc., No. 18-

07304 (ESL), 2021 Bankr. LEXIS 1075 (Bankr. D.P.R. Apr. 22, 2021).  The court observed that

§ 1208(c)—which permits dismissal of a chapter 12 case for cause—must be read in conjunction

with the deadlines prescribed in § 1221 and § 1224. Id. at *14-15. Quoting In re Pertuset, 492

B.R. 232, 247 (Bankr. S.D. Ohio 2012), aff'd, 485 B.R. 478 (B.A.P. 6th Cir. 2012), the court

further observed that the expedited, mandatory time periods for processing a chapter 12 case are

intended to "protect creditor[s'] interests and to preclude diminution in the value of the collateral

if a reorganization cannot be achieved." Id. at *15.

> Against this backdrop, the court concluded:
>
> Has the Debtor been afforded a reasonable time to have a Chapter 12 plan
> confirmed? Definitely so, over 30 months is a reasonable time. Has the Debtor
> caused the delay? The answer is yes. Condado has asserted its rights. The court
> denied the prior motion to dismiss filed by Condado and declined to find that the
> milk was part of its collateral. However, the Debtor has not taken the necessary
> actions to present a confirmable Chapter 12 plan. Consequently, it has incurred
> [a]n unreasonable delay prejudicial to creditors.
>
> In view of the foregoing, the court hereby grants Condado's motion to dismiss
> and orders the dismissal of the case pursuant [to] section 1208(c)(1) for
> unreasonable delay prejudicial to creditors and Debtor's failure to file a timely
> confirmable plan under Section 1208(c)(3).

Id. at *19-20.

In support of its finding that there was unreasonable delay by the Debtor, the court cited

instances of the Debtor's "inaction," including: (1) the failure to object to Condado's claim;

(2) the failure to provide for the payment of Condado's secured claim since its filing in February

2019; (3) the failure to recognize that Condado had additional security beyond the disputed lien

on the milk proceeds—namely, real estate owned by Mr. Barreto Ginorio and J.M. Dairy, Inc.;

(4) the failure to "move[ ] to modify the [P]lan" or ask "for additional time to file an amended

plan"; (5) the failure to "address[ ] the denial of confirmation"; and (6) the failure to "fil[e] an

objection or an adversary proceeding contesting the extent of Condado's lien." Id. at *16-18.

The court ruled that the Debtor's assertion that it could not propose a different plan while

Condado continued to intercept the proceeds from the sale of raw milk amounted to an admission

of "lack of feasibility and corroborate[d] what the monthly reports of operation show[ed] . . . ."
Id. at *18.

   This appeal followed.  The Debtor did not seek a stay of the Dismissal Order.

## III.   Developments After Commencement of the Appeal

   In May 2021, Condado filed three UCC-1 Financing Statements with the Puerto Rico
Department of State, asserting a lien on the Debtor's milk quotas *and* accounts receivable.

   In addition, while this appeal was in the briefing stage, in October 2021, the district court
dismissed the appeal of the April 15, 2020 ruling as moot due to the dismissal of the underlying
bankruptcy case.[7]  In February 2022, the district court similarly dismissed the appeal of the
Order Denying Motion to Enforce on mootness grounds.

## <u>SCOPE OF THE APPEAL</u>

   As a preliminary matter, we must first determine what issues, if any, we may consider on
appeal.  Bankruptcy Rule 8009(a)(1)(A) requires that an appellant file and serve upon the
appellee a statement of the issues the appellant intends to present on appeal.  Discrepancies
between the issues the Debtor framed in its statement of issues and those identified in its
appellate brief present us with the threshold tasks of defining the scope of this appeal and
deciding whether the Debtor has preserved *any* issues on appeal.  In its statement of issues, the
Debtor listed three issues to be presented on appeal, all related to the order denying the Motion to
Enforce (which was appealed to the district court and is not the subject of this appeal).  Those
issues, however, are not briefed and, therefore, they are waived.  <u>Tower v. Leslie-Brown</u>, 326
F.3d 290, 299 (1st Cir. 2003) ("[W]e have made it abundantly clear that failure to brief an

---

[7]  The Debtor's appeal of the district court's ruling to the U.S. Court of Appeals for the First Circuit is
currently pending.

argument does, in fact, constitute waiver for purposes of appeal.") (citations omitted).  In its appellate brief, the Debtor lists three completely different issues, all related to the Dismissal Order.  Because none of these issues were identified in the Debtor's statement of issues, potentially, no issues were preserved for appeal.  Where there are "no exceptional circumstances," issues omitted from the statement of issues are waived on appeal, unless "the substance of the [omitted] issue reasonably can be inferred from an issue or issues that are listed."  City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 91 (1st Cir. 2011) (citation omitted).

The substance of the issues listed in the Debtor's appellate brief cannot be gleaned from those listed in its statement of issues.  The question, therefore, becomes whether there are exceptional circumstances that preclude waiver of the briefed issues, thus rescuing this appeal. The First Circuit has not identified what circumstances will qualify as exceptional such that an issue may be preserved for appeal.  Relying on guidance beyond our circuit, we have previously considered the merits of issues omitted from the statement of issues, where, among other things, the issues were addressed by the bankruptcy court and were fully briefed by the appellee without objection.  See Nelson v. Wells Fargo Bank, N.A. (In re Nelson), 621 B.R. 542, 553 (B.A.P. 1st Cir. 2020) (citing Cumbo v. McDow, No. 2:06cv97, 2006 WL 3692665, at *2 (E.D. Va. Dec. 12, 2006) (listing considerations)).  Other courts have similarly made an exception to the waiver rule and have "entertain[ed] arguments not specified in the statement of issues when a complete understanding of the case can be discerned from the briefs and the record, and prejudice has not been shown."  Le v. Huynh (In re Le), BAP No. AZ-17-1308-BaFS, 2018 WL 5260850, at *3 (B.A.P. 9th Cir. Oct. 22, 2018) (citations omitted); see also Horner v. Aurora Commercial Corp.

(In re Aurora Commercial Corp.), No. 19-B-10843 (SCC), 2021 WL 1255668, at *5 n.4

(S.D.N.Y. Apr. 1, 2021) (ruling omitted issue not waived where it was fully briefed by the

parties and no prejudice resulted from the omission).  Observing that the rule requiring a

statement of issues exists "to ensure the adequacy of the record," one bankruptcy appellate panel

heard the omitted issue, reasoning the result would have been different had the appellee "been

blindsided, and not designated something for the record relating to an unstated issue . . . ."

Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 166 (B.A.P. 9th Cir.

1999) (citations and some internal quotation marks omitted).

    Applying the foregoing considerations here, we proceed to the merits of the issues listed

and addressed in the Debtor's brief, as Condado has fully briefed them (and addressed them at

oral argument) with no complaint about the Debtor's failure to confine its brief to the issues

listed in the statement of issues.  Mindful of the policy that favors decisions on the merits rather

than on the basis of mere technicalities, Foman v. Davis, 371 U.S. 178, 181 (1962), we decline

an unyielding application of the waiver rule expressed in American Cartage where, as here, we

discern no prejudice to Condado.

## **POSITIONS OF THE PARTIES**

### I.    The Debtor

    The Debtor first asserts that the bankruptcy court should have followed the two-step

process for dismissal prescribed in Efron v. Candelario (In re Efron), 529 B.R. 396, 411-12

(B.A.P. 1st Cir. 2015), requiring chapter 11 debtors to demonstrate "unusual circumstances"

after the party moving for dismissal establishes cause under § 1112(b).  Arguing the Efron

"unusual circumstances" test applies in chapter 12 cases as well as chapter 11, the Debtor

14

maintains that the bankruptcy court erred by "focus[ing] merely on the delays" without considering the Debtor's explanations for those delays.

Second, the Debtor maintains that any delays in the case were caused not only by Condado, but by the bankruptcy court, itself.  Noting that the Motion to Prohibit Use of Cash Collateral was filed on February 5, 2019, the Debtor highlights that the court did not decide the motion until over a year later.

Third, the Debtor challenges the bankruptcy court's ruling that the Debtor "should have filed an adversary complaint on the milk proceeds issue and objected to the Condado claim." Pointing to the court's request for additional briefing, the Debtor argues it "had every reason to expect the court to decide the Condado claim through a motion, not an adversary" proceeding and insists it "made every effort to recover the milk proceeds."

## II.    Condado

For starters, Condado argues that its filing of three UCC-1 Financing Statements after the entry of the Dismissal Order has rendered this appeal equitably moot.  Given these UCC-1 Financing Statements, Condado claims, it would be impossible for the Debtor to propose a confirmable plan, even if we were to reverse the Dismissal Order.

As for the merits, Condado asserts the Debtor waived its argument that the court should have applied the "unusual circumstances" standard of § 1112(b)(2) by failing to make this argument in the proceedings below, despite having filed three separate oppositions to the Second Motion to Dismiss.  And, in any event, Condado further argues, "Congress . . . did not legislate the Section 1112(b)(2) criterion onto Section 1208(c)."  (emphasis omitted).  Nevertheless, citing L&R Development & Investment Corp. v. Román-Ramos (In re L&R Development & Investment Corp.), BAP No. PR 19-044, 2020 WL 1862377, at *8-9 (B.A.P. 1st Cir. Apr. 13,

15

2020), Condado maintains even if we were to apply the unusual circumstances test to this case, dismissal would still be proper in light of the Debtor's untimely MORs.

Finally, Condado denies responsibility for the delays in the Debtor's case, instead emphasizing that: this was the Debtor's second bankruptcy case; the Debtor delayed in filing the Plan beyond the deadline mandated in § 1221; the Debtor never filed another plan after the bankruptcy court denied confirmation of the first; and the Debtor filed the majority of its MORs after the deadline to do so had expired.

Condado requests dismissal of this appeal on mootness grounds or, alternatively, affirmance on the merits.

## III.     The Debtor's Reply

In its reply brief, the Debtor argues the appeal is not moot because "it can obtain effective relief" if it prevails on appeal.  According to the Debtor, if we reverse the Dismissal Order, "the automatic stay will be reinstated, which will void" the UCC-1 Financing Statements.

Although the Debtor does not challenge Condado's assertion that it failed to raise the Efron argument in the bankruptcy court, it nonetheless contends that we should not deem that issue waived.  Citing Hormel v. Helvering, 312 U.S. 552, 557 (1941), the Debtor maintains we may make an exception to the waiver rule for "pure questions of law."

In defense of its failure to commence an adversary proceeding seeking turnover of the milk proceeds, the Debtor argues "it was unclear until City of Chicago v. Fulton, 141 S. Ct. 585 (2021)" that an adversary proceeding was necessary.

## IV.     Condado's Motion to Dismiss Appeal and the Debtor's Objection

After this appeal was fully briefed, Condado filed a motion to dismiss (the "Motion to Dismiss Appeal"), reiterating the argument advanced in its appellate brief that this appeal has

16

become equitably moot given the "new reality" of the recently filed UCC-1 Financing

Statements.  The Debtor again counters that it "can move to reinstate the stay" if we reverse the

Dismissal Order.  In addition, the Debtor argues that the filing of Condado's "new" UCC-1

Financing Statements does not "moot the issue of who owns the milk production proceeds" and

"does not absolve Condado of liability for seizing assets of the bankruptcy estate."  The Debtor

asks us to deny the Motion to Dismiss Appeal.

## APPELLATE JURISDICTION

"[E]very federal appellate court has a special obligation to satisfy itself . . . of its . . .

jurisdiction . . . ."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998) (citations and

internal quotation marks omitted).  Accordingly, our analysis begins with an examination of our

jurisdiction and Condado's assertion—advanced in its appellate brief and its Motion to Dismiss

Appeal—that this appeal has become equitably moot.

### I.      Finality

We have jurisdiction to hear appeals from final judgments, orders, and decrees.

28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587

(2020).  A bankruptcy court order dismissing a chapter 12 case is a final, appealable order.  Tim

Wargo & Sons, Inc. v. Equitable Life Assurance Soc'y of the U.S. (In re Tim Wargo & Sons,

Inc.), 869 F.2d 1128, 1129 (8th Cir. 1989); Haffey v. Crocker (In re Haffey), 576 B.R. 540, 543

(B.A.P. 6th Cir. 2017).

### II.     Equitable Mootness

Finality of the challenged order, however, is not the only relevant consideration in

determining whether we should reach the merits of an appeal.  "Mootness—which encompasses

17

both equitable and jurisdictional considerations, United Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz), 983 F.3d 69, 72 (1st Cir. 2020)—is another factor we must take into account." La Trinidad Elderly LP SE v. Loíza Ponce Holdings, LLC (In re La Trinidad Elderly LP SE), 627 B.R. 779, 794 (B.A.P. 1st Cir. 2021) (declining to dismiss on equitable mootness grounds appeal of order dismissing chapter 11 case) (citation omitted).

Equitable mootness—invoked here by Condado— "concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to 'unscramble the eggs.'" Id. (quoting Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC), 823 F.3d 966, 968 (9th Cir. 2016)). "The doctrine . . . is 'rooted in the court's discretion in matters of remedy and judicial administration' not to determine a case on its merits." Id. (quoting In re López-Muñoz, 983 F.3d at 72) (some internal quotation marks omitted). Put yet another way, "equitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002) (emphasis omitted).

## III.     Equitable Mootness Principles Applied

While there is no doubt the Debtor failed to obtain a stay of the Dismissal Order and this omission permitted certain developments to occur as a result, we are unpersuaded that any such change in circumstances—including the filing of three UCC-1 Financing Statements—has rendered an effective remedy impracticable or imprudent. If we were to reverse the Dismissal Order, the case could be reinstated upon remand to the bankruptcy court, which would constitute effective relief. Reopening would afford the Debtor an opportunity to rectify some of its omissions. The Debtor could file an adversary proceeding under § 542 seeking to recover the

disputed proceeds retained by Condado prior to the filing of the new UCC-1 Financing Statements.  The Debtor might also file a new plan.  Because these scenarios remain possible (albeit unlikely) in the event of a reversal of the Dismissal Order, we conclude that the appeal is not equitably moot.  See In re La Trinidad Elderly LP SE, 627 B.R. at 797 ("bypass[ing]" equitable mootness question where there was a chance debtor might reorganize using remaining assets after foreclosure).  Further, this case is distinguishable from appeals of orders confirming plans, where courts typically find equitable mootness, reasoning substantial consummation of a plan of reorganization renders it difficult and/or inequitable to unscramble the proverbial eggs. See Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 989 F.3d 123, 129-30 (1st Cir. 2021); Pinto-Lugo v. Fin. Oversight & Mgmt. Bd. for PR (In re Fin. Oversight & Mgmt. Bd. for P.R.), 987 F.3d 173, 180-88 (1st Cir. 2021); In re López-Muñoz, 983 F.3d at 72-73.  Obviously, where, as here, confirmation has been denied, concepts such as substantial consummation and resulting prejudice to third parties do not come into play.  Therefore, the policy which undergirds equitable mootness—protection of third parties who have changed their position in reliance on the appealed order—is not a pressing issue here.

    In light of the foregoing, we now turn to the merits of the appeal.

## STANDARD OF REVIEW

    A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo.  Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 592 F.3d 267, 269 (1st Cir. 2010).  The dismissal of a debtor's chapter 12 case is reviewed for abuse of discretion.  In re Haffey, 576 B.R. at 543 (citation omitted).  "The findings of a bankruptcy court

which support dismissal of the bankruptcy case are factual determinations which are reviewed

under the clearly erroneous standard." Id. (citation and internal quotation marks omitted).

## MERITS DISCUSSION

## I.    Applicable Standards

### A.    Relevant Timing Considerations in a Chapter 12 Case

The bankruptcy court offered two reasons for dismissal: "unreasonable delay prejudicial

to creditors and [the] Debtor's failure to file a timely confirmable plan . . . ." In re Vaqueria Las

Martas, Inc., 2021 Bankr. LEXIS 1075, at *20. Because the concept of delay was central to both

reasons, it is worth setting forth the overarching timing considerations in a chapter 12 case before

advancing to the legal standard governing dismissal.

> Only the debtor may file a [chapter 12] plan, which must be done no later than 90
> days after the petition is filed unless the court extends this period based on
> circumstances for which the debtor should not justly be held accountable.
> 11 U.S.C. [§] 1221. The bankruptcy court is statutorily required to conclude the
> confirmation hearing no later than 45 days after the filing of the debtor's
> propose[d] plan, "except for cause." 11 U.S.C. § 1224. These mandatory time
>
> periods are included so that "chapter 12 cases would be processed expeditiously
> by the bankruptcy courts and would not be subject to delay so often characteristic
> of chapter 11 cases." 8-1200 Collier on Bankruptcy ¶ 1200.01. The legislative
> history suggests that Congress intended that Chapter 12 bankruptcy cases were to
> move along expeditiously to protect creditor's interests and to preclude
> diminution in the value of collateral if a reorganization cannot be achieved. In re
> Pretzer, 96 B.R. 790, 793 (Bankr. N.D. Ohio 1989) (citations omitted).

In re Haffey, 576 B.R. at 549-50 (some alterations in original) (quoting In re Pertuset, 492 B.R.

at 247).

### B.    The Standard Governing Dismissal of Chapter 12 Cases

Section 1208(c) permits a bankruptcy court to dismiss a case "for cause" and provides

a non-exclusive list of circumstances that might constitute "cause" for dismissal. Id. at 550.

Creditors bear the burden of establishing that cause exists to dismiss a chapter 12 case.

In re Pertuset, 492 B.R. at 250. "Ultimately, [t]he decision to dismiss a Chapter 12 petition is

within the sound discretion of the bankruptcy court." Akers v. Micale, 609 B.R. 175, 184 (W.D.

Va. 2019) (citation and internal quotation marks omitted).

  An example of cause listed in § 1208—and cited by the bankruptcy court as a basis for its

decision—is "unreasonable delay . . . by the debtor that is prejudicial to creditors[.]"

11 U.S.C. § 1208(c)(1). To dismiss under this subsection, courts need to find both that the

debtor had engaged in activities that caused unreasonable delay and that the delay has prejudiced

creditors. In re French, 139 B.R. 476, 483 (Bankr. D.S.D. 1992). "The Code does not specify a

particular length of delay that is considered per se 'unreasonable' or 'prejudicial;' however,

examples of what courts have found to be unreasonable are abundant." In re Dickenson, 517

B.R. 622, 632 (Bankr. W.D. Va. 2014) (citing United States v. Suthers (In re Suthers), 173 B.R.

570, 572-73 (W.D. Va. 1994) (ruling decision *not* to dismiss was an abuse of discretion, where

debtor failed to confirm multiple plans in just under three years and violated various court

orders); and In re Carroll, No. DG 13-08930, 2014 WL 3571535, at *2 (Bankr. W.D. Mich. July

14, 2014) (holding failure to file an amended plan "promptly" after denial of earlier plan was

"unreasonable" and ran afoul of intended "swift[ ]" disposition of chapter 12 cases)).

Consequently, courts consider "the specific facts of th[e] case, including the length of the delay,

the reason for or explanation of the delay, the impact of the delay on creditors, and how close the

debtor is to having a viable plan ready for confirmation." Id. Additionally, courts have stated

unreasonable delays warranting dismissal can result from: (1) "failure to timely file documents";

(2) "failure to file a confirmable plan"; and (3) "failure to file a modified plan, or failure to

perform under a confirmed plan." In re Keith's Tree Farms, 519 B.R. 628, 643 (Bankr.

W.D. Va. 2014) (hereinafter "Keith's Tree Farms I") (citing In re French, 139 B.R. at 4[83]),

aff'd sub nom., Keith's Tree Farms v. Grayson Nat'l Bank, 535 B.R. 647 (W.D. Va. 2015)

(hereinafter "Keith's Tree Farms II").

### C.    The Unreasonable Delay Standard for Dismissal Applied

Here, the record reveals the presence of all three indicia of unreasonable delay identified

in Keith's Tree Farms I.  First, the record easily establishes an "obvious type" of prejudicial

delay: "failure to timely file requisite documents pursuant to the Bankruptcy Code, the Federal

Rules of Bankruptcy Procedure, and any applicable local rules."  In re Gaulden, 522 B.R. 580,

589 (Bankr. W.D. Mich. 2014) (dismissing chapter 7 case for unreasonable delay that resulted in

prejudice to creditors).  Most significantly, the Debtor filed the Plan late—long after the deadline

prescribed by the Bankruptcy Code.  The Debtor filed its chapter 12 petition on December 14,

2018, so the deadline for filing a plan was March 14, 2019.  After the Debtor missed this

deadline, on March 18, 2019, the bankruptcy court issued an order to show cause, directing the

Debtor to demonstrate why its case should not be dismissed on account of this failure.  Although

the Debtor stated the missed deadline was inadvertent, it still did not file a Plan until June 1,

2020, over 14 months later.  Beyond the late filing of the Plan, the Debtor also filed its operating

reports erratically.[8]

---

[8]  Bankruptcy Rule 2015(b), read together with § 704(a)(8), imposes a duty on chapter 12 debtors to file "periodic" reports.  See 11 U.S.C. § 704(a)(8); Fed. R. Bankr. P. 2015(b); In re Dickenson, 517 B.R. at 636; see also General Order 20-01 of the U.S. Bankruptcy Court for the District of P.R. (adopting Interim Amendments to the Federal Rules of Bankruptcy Procedure, including Interim Rule 2015(c), effective February 19, 2020).  There is also authority for the proposition that a chapter 12 debtor is required to perform "all of the functions and duties of a chapter 11 debtor."  See 2 Bankruptcy Desk Guide § 15:19 (Mar. 2022 Update) (citing 11 U.S.C. § 1203).  Accordingly, some courts have stated that chapter 12 cases may be dismissed for failure to file timely reports on a monthly basis.  See, e.g., In re Weber, 297 B.R. 567, 572 (Bankr. N.D. Iowa 2003).  As Condado notes, the Panel has previously ruled, in the context of a chapter 11 case, that even one late MOR can constitute cause for dismissal.  See L&R Dev. & Inv. Corp., 2020 WL 1862377, at *6 ("Monthly reports and the financial disclosures contained within them are the life-blood of the Chapter 11 process and are more than mere busy work.") (citation and internal quotation marks omitted).  There is no reason to conclude that operating reports have any less

The second badge of prejudicial delay—inability to propose a confirmable plan—is easily established by this record. The Debtor twice conceded it could not propose a feasible plan without the contested milk proceeds—once in its Combined Response to the objections of Condado and the Trustee to Plan confirmation, and again in its Response to Denial of Confirmation. The law is clear that inability to file a confirmable plan amounts to an unreasonable delay that is prejudicial to creditors. See Ames v. Sundance State Bank (In re Ames), 973 F.2d 849, 851-52 (10th Cir. 1992) ("Because dismissal of a Chapter 12 case is appropriate when debtors have failed to propose a confirmable plan, the bankruptcy court did not abuse its discretion in dismissing debtors' case.") (citations omitted); Keith's Tree Farms II, 535 B.R. at 654 (determining there was no abuse of discretion in dismissing chapter 12 case for unreasonable delay due to debtor's "inability to file a confirmable plan[]," among other things); Zerr v. Montezuma Credit Union (In re Zerr), 167 B.R. 953, 960 (Bankr. D. Kan. 1994) (stating chapter 12 dismissal is warranted where debtors fail to "propose a confirmable plan after some period of delay, particularly when the court has denied confirmation on the basis of lack of feasibility"). Accordingly, the Debtor's concession that it could not propose a feasible plan unequivocally establishes grounds for dismissal. See In re Acevedo, No. 12-12393-JNF, 2014 WL 1664255, at *4 (Bankr. D. Mass. Apr. 24, 2014) (dismissing case in analogous chapter 13 context, where debtor similarly conceded inability to propose confirmable plan).

Finally, the record presents the third indicator of unreasonable delay identified in Keith's Tree Farms I: failure to promptly file an amended plan after denial of confirmation or to request

---

significance in a chapter 12 context. Just as in chapter 11 cases, chapter 12 operating reports provide necessary information to the court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts. See id. Therefore, these entities have every reason to expect operating reports to be filed regularly, if not monthly.

an extension of time to file an amended plan. After spending two years in this second bankruptcy case before filing any proposed plan, the Debtor then failed to respond to the Order Denying Confirmation with an amended plan, instead insisting no plan was possible. Thus, two years after case commencement, not only was there no confirmed plan, there was no prospect of a confirmable plan. This delay is at odds with "the strong statutory signals that chapter 12 proceedings are to move quickly . . . ." In re Carroll, 2014 WL 3571535, at *2. Without a confirmable plan in prospect, the bankruptcy court did not abuse its discretion in concluding "enough [wa]s enough." See Keith's Tree Farms II, 535 B.R. at 654 (observing, in appeal of dismissal order, that "'[b]ankruptcy courts are given a great deal of discretion to say when enough is enough' when it comes to granting or denying the opportunity to amend reorganization plans") (citation omitted); see also In re Carroll, 2014 WL 3571535, at *2 (dismissing chapter 12 case when debtor failed to file "prompt amendment" to plan after denial of confirmation).

As for why the Debtor's delay was prejudicial to creditors, the bankruptcy court observed generally that "[p]rejudice to creditors ought to be fairly easy to demonstrate if . . . unreasonable delay . . . has occurred." In re Vaqueria Las Martas, Inc, 2021 Bankr. LEXIS 1075, at *15-16 (quoting 8 Collier on Bankruptcy ¶ 1208.03[2] (Richard Levin & Henry J. Sommer eds., 16th ed.). Here, the record reflects that, with the passage of time, the Debtor's livestock decreased by 50%, thus evidencing a marked diminution in the Debtor's assets. This, in turn, caused raw milk production to decrease dramatically, making the feasibility of any plan even less likely. Under these circumstances, the Debtor's delay was prejudicial to creditors. Moreover, the bankruptcy court was left with no realistic alternative to dismissal where the Debtor: (1) conceded it could not propose a feasible plan; (2) failed to ask for time to do so; and (3) argued that confirmation proceedings should be "stayed." Not only was dismissal the only result that was consistent with

Congress's chapter 12 timing objectives, it was the only realistic option available short of

permitting the Debtor to remain in bankruptcy indefinitely.  This remains so despite the Debtor's

repeated refrain that Condado was receiving all the proceeds of the milk production.

The Debtor's attempt to blame the bankruptcy court for the subject delay does not alter

the outcome of our analysis.  First, this argument is made for the first time on appeal and is

therefore waived.  See Abdallah v. Bain Capital, LLC, 752 F.3d 114, 120 (1st Cir. 2014).

Second, even if we were to consider it, the Debtor's argument would not succeed.  In focusing on

certain scheduling delays reflected in the docket, the Debtor overlooks its own delay in filing the

Plan beyond the period prescribed by § 1221,[9] its failure to file an amended plan after the denial

of confirmation or to seek an extension of time to do so, and the irregular filing of operating

reports.

The Debtor's argument that the bankruptcy court should have applied Efron, which

requires consideration of whether there were unusual circumstances justifying the delay, comes

too late.  Because that argument is made for the first time on appeal, it too is waived.  See id.

Though the Debtor argues that Hormel supports a different result, that case actually reinforces

the principle that "an appellate court does not give consideration to issues not raised below,"

allowing for deviation from that rule only for "exceptional cases or particular circumstances"

which are not present here.  312 U.S. at 556-57.

Finally, the Debtor's claim that "it was unclear until [Fulton] that [it] had to file an

adversary complaint to force Condado to turn over the milk proceeds" is simply incorrect.

See Fed. R. Bankr. P. 7001(1)-(2) (stating "a proceeding to recover money or property" and

---

[9]  In fact, this delay, alone, might justify dismissal.  See 11 U.S.C. 1208(c)(3).  As noted below, however, we do not reach this issue.

"a proceeding to determine the validity, priority, or extent of a lien" are both adversary proceedings); see also In re Denby-Peterson, 941 F.3d 115, 128 (3d Cir. 2019) (stating § 542(a)'s "turnover provision requires the debtor to bring an adversary proceeding"); In re Dziurgot-Farnsworth, No. 14-10915, 2014 WL 7145712, at *2 (Bankr. D.R.I. Dec. 12, 2014) (stating for turnover relief, the "required procedure" is "the initiation of an adversary proceeding").  Further, the Debtor misapprehends the import of Fulton.  There, the Supreme Court held that an entity's mere retention of estate property after the filing of a bankruptcy petition does not constitute an act to exercise control over property of the estate in violation of the automatic stay.  See Fulton, 141 S. Ct. at 592.  The Court decided the issue narrowly, explicitly declining to "decide how the turnover obligation in § 542 operates."  Id.

Because one ground is sufficient for dismissal, our analysis ends here, with the conclusion that the bankruptcy court did not abuse its discretion in dismissing the Debtor's case under § 1208(c)(1) for unreasonable delay that was prejudicial to creditors.  We decline to examine the second statutory ground for the Dismissal Order, § 1208(c)(3).

## CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the Dismissal Order.  A separate order **DENYING** the Motion to Dismiss Appeal shall enter.

26